**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Andre Lee DAVIS (97–5363), Eric Rogers (97–5364), L.G. Catlett (97–5365), Mario Duerson (97–5366), and Kenneth Green (97–5367), Defendants–Appellants.**

Nos. 97–5363, 97–5364, 97–5365, 97–5366 and 97–5367.

United States Court of Appeals, Sixth Circuit.

Argued and Submitted July 29, 1998.

Decided May 21, 1999.

Terry M. Cushing, Asst. U.S. Attorney (briefed), Office of U.S. Attorney, Louisville, KY, for Plaintiff–Appellee.

James A. Earhart, Asst. U.S. Attorney (argued and briefed), Office of U.S. Attorney, Louisville, KY, for Plaintiff–Appellee in docket Nos. 97–5363, 97–5364 and 97–5367.

James A. Earhart, Asst. U.S. Attorney (briefed), Office of U.S. Attorney, Louisville, KY, for Plaintiff–Appellee in docket Nos. 97–5365 and 97–5366.

Jill Giordano (argued and briefed), Giordano Law Office, Princeton, KY, Tod D. Megibow, Megibow & Edwards, Paducah, KY, for Defendant–Appellant Andre Lee Davis.

Richard L. Walter (argued and briefed), Boehl, Stopher & Graves, Paducah, KY, for Defendant–Appellant Eric Lamont Rogers.

Andrew Terrian Coiner (briefed), Paducah, KY, L.G. Catlett, pro se, Manchester, KY, for Defendant–Appellant L.G. Catlett.

William L. Brown (briefed), Knoxville, TN, for Defendant–Appellant Mario Duerson.

Lester Bennett Guier (argued and briefed), Hopkinsville, KY, for Defendant–Appellant Kenneth Green.

Before: SUHRHEINRICH and DAUGHTREY, Circuit Judges;

McKEAGUE,* District Judge.

DAUGHTREY, Circuit Judge.

Five defendants, Andre Lee Davis, Eric Lamont Rogers, L.G. Catlett, Mario Duerson, and Kenneth Green, appeal from convictions entered against them in a joint trial on various drug, robbery, and firearm charges. All five allege error in the district court's handling of a juror's request to be excused from deliberations. Furthermore, Davis, Duerson, and Green challenge the sufficiency of the evidence of some of the offenses for which they were convicted; Rogers and Green contend that their trials should have been severed from those of their co-defendants; and Duerson claims prejudice from the mention of his involvement in criminal activity in a statement given to police by a non-testifying co-defendant. Because we conclude that the district court erred in not questioning all jurors about the effect upon them of prejudicial, extraneous information, we find it necessary to vacate the convictions of all five defendants and remand the cases to the district court for a further hearing. We also conclude that there is merit to the argument presented by defendant Duerson that his conviction for stealing property belonging to the United States should have merged into his conviction for robbery at gunpoint of that same money. In all other respects, we conclude that the district court did not err and that the evidence is sufficient to support the findings of guilt.

### PROCEDURAL AND FACTUAL BACKGROUND

To do so, however, requires a summary of the facts presented at the trial. Testimony was offered to show that Detective Robby Kirk met with Angela Dillard, an informant in the Hopkinsville, Kentucky, area, on June 11, 1996. At that time, Dillard stated that she could lead Kirk to individuals involved in crack cocaine traf-

ficking in Hopkinsville. She then accompanied Kirk, who was operating in an undercover capacity, to various locations in the area where, on various dates, Kirk purchased crack cocaine from Eric Lamont Rogers, Andre Lee Davis, and L.G. Catlett.

The last of these transactions occurred on June 26, 1996, when Kirk and Dillard drove to Carl Smith Road with money provided by the federal Drug Enforcement Administration to consummate a multiple-ounce crack cocaine transaction. After finding Davis, Kirk agreed with him on a $4000 purchase price for five ounces of crack cocaine. As had been their practice in past deals, the parties parted ways for 30 minutes to allow Davis to obtain the drugs. After the expiration of that time period, however, Davis told Kirk that one-half of the order was still "cooking" and that Kirk should return to Carl Smith Road in another hour. After an hour had passed, Kirk and Dillard drove to Carl Smith Road where Davis approached the vehicle with two other men, later identified as defendants Duerson and Green, and informed Kirk that he (Davis) was unable to secure the five ounces of crack cocaine, but that Kirk could negotiate a sale of that amount from Duerson and Green.

After preliminary discussions between Duerson and Kirk, and after exhibitions of the drugs and money, Duerson sat down in the front passenger seat of Kirk's vehicle, pulled out a four-inch revolver from his waistband, and pointed the gun at Kirk. When Kirk reached out and grabbed the barrel of the weapon, Kenny Green, who had been standing outside the driver's door of the car, placed a .25 caliber automatic pistol to Kirk's head and demanded the $4000 in the undercover officer's possession. Duerson then grabbed the money and jumped out the window of the car. Kirk immediately drove away, but saw through his rearview mirror that both

* The Honorable David W. McKeague, United States District Judge for the Western District of Michigan, sitting by designation.

Duerson and Green were shooting at him. After driving a short distance up the road, Kirk pulled his vehicle sideways across the street, drew his service revolver, and began firing back at the men. Davis, Duerson, and Green all fled into the nearby woods.

Eventually, all five defendants were arrested by law enforcement authorities, charged with various offenses, and tried by a jury of their peers. At the conclusion of the trial, the jury convicted Davis, Rogers, Catlett, Duerson, and Green of all charges against them. Subsequently, Davis was sentenced to an effective life sentence for three counts of possession of crack cocaine with intent to distribute and one count of conspiracy with defendants Duerson and Green to distribute crack cocaine. Rogers received a 48–month prison sentence for possession of crack cocaine with intent to distribute, Catlett received a sentence of 104 months for his conviction for possession of crack cocaine with intent to distribute, and Duerson and Green received respective, effective sentences of 300 months and 308 months for conspiracy to distribute crack cocaine, stealing $4000 in United States currency, robbery of $4000 in United States currency at gunpoint, and using or carrying a firearm in the commission of a crime of violence or a drug trafficking offense.

## DISCUSSION

### I. Taint of the Jury

■ Before this court, all five defendants contend that the district court erred in refusing to grant a mistrial in order to cure an instance of alleged juror misconduct. After completion of the presentation of evidence at trial, Alan Estes, one of the jurors, sent a note to the district judge requesting that the judge excuse Estes from further service on the jury. In the note, Estes explained that he lived in the Hopkinsville area and operated a used car business that catered to individuals in a section of town heavily populated by minority citizens. Because he had previously done business with some of the defendants, witnesses, and their families, and because he was a recognized figure in the community, Estes claimed that he feared for his own safety and that of his business should he be identified as a juror who participated in the decision leading to the defendants' incarceration. He also informed the court that his fear was prompted by the fact that, during the trial, he had heard from one of his employees that members of the community were already aware of Estes's jury service and were discussing his role in the proceedings. The district court apparently took no immediate action in response to the note.

Later, after the jury instructions were read, but before the jurors were actually charged, Estes stood up in open court and again requested that he be excused from deciding the fate of the defendants. The remainder of the panel was then removed from the courtroom and Estes, the district judge, and counsel for the defendants and for the government convened in the judge's chambers to discuss the situation more fully. At that time, Estes revealed that he had previously expressed his fears to the other jurors in the jury room and that a number of those individuals verbally empathized with his plight, stating that they did not blame Estes for seeking to be excused from further jury service. As a result of the hearing in chambers, the district court denied the defendants' motions for a mistrial, but discharged Estes as an alternate juror. The judge did so, however, without any explanation to the jury, without holding a hearing to investigate the scope of the problem, and, most significantly, without instructing the jury that anything they had learned from Estes was not to be considered during their deliberations.

■ As we recognized in *United States v. Shackelford,* 777 F.2d 1141, 1145 (6th Cir.1985), the Sixth Amendment's right to trial by jury "is designed to ensure criminal defendants a fair trial by a 'panel

of impartial, "indifferent" jurors.'" (Quoting *Irvin v. Dowd,* 366 U.S. 717, 81 S.Ct. 1639, 6 L.Ed.2d 751 (1961).) Thus, "[w]hen possible juror misconduct is brought to the trial judge's attention he has a duty to investigate and to determine whether there may have been a violation of the [constitutional guarantee]." *Id.* On review, we examine the district judge's decision on juror misconduct for abuse of discretion. *See United States v. Copeland,* 51 F.3d 611, 613 (6th Cir.1995). Such an abuse may be found when a district court refuses "to permit an evidentiary hearing ... when the alleged jury misconduct involves extrinsic influences." *Shackelford,* 777 F.2d at 1145.

 We have recently noted that "[a] new trial will not be necessary every time a question of juror partiality is raised. Where a colorable claim of extraneous influence has been raised, however, a '*Remmer* hearing'" must be held to afford the defendant an opportunity to establish actual bias. *United States v. Herndon,* 156 F.3d 629, 635 (6th Cir.1998) (referencing *Remmer v. United States,* 347 U.S. 227, 74 S.Ct. 450, 98 L.Ed. 654 (1954)). At that hearing, the defendant bears the burden of proving actual juror bias, and no presumption of prejudice arises merely from the fact that improper contact occurred. *See United States v. Zelinka,* 862 F.2d 92, 96 (6th Cir.1988).

In this case, although the district court did question Estes in chambers regarding his unauthorized communication with his employee, the judge did not inquire of the remaining jurors whether they were influenced in any manner by Estes's remarks concerning his fear for his safety. Given the fact that Estes was clearly motivated by fear of retaliation from the defendants, their families, and their acquaintances, the fact that the information that prompted the fear was provided by an extraneous source, and the fact that a number of jury members openly agreed that a person in Estes's predicament should seek to be removed from the panel, such further inqui-

ry seems not only appropriate, but necessary to ensure the impartiality of the jury.

Without the benefit of a hearing delving into the extent to which Estes's comments affected the other jurors' deliberations, neither the district court nor this court has any basis for concluding that the extraneous communications were harmless, especially in the absence of a cautionary instruction to the jury to disregard such extraneous information. In order to preserve the vitality of the constitutional concept of an impartial jury and to ensure that the convictions of defendants are based upon admissible evidence and not extraneously-fostered conjecture and paranoia, we thus vacate the defendants' convictions and remand these cases for an appropriate and thorough *Remmer* hearing.

 At the hearing the court shall make available any of the jurors that defense counsel wishes to question about their recollection of the deliberation process, Estes's comments, and the weight that those comments played in the determination of the verdicts. Because the defendant bears the burden of demonstrating the existence of jury taint, if this questioning fails to establish that the improper extra-judicial comments influenced the jurors' deliberations, a retrial will not be necessary.

## II. Severance

 Defendants Rogers and Green also contend that the district court erred in denying their individual motions to sever their trials from the trials of their co-defendants. Specifically, Rogers argues that he was prejudiced by being tried with individuals charged with more serious offenses, because he himself was charged with only one count of possession of a relatively small quantity of drugs and was not alleged to have been involved in any violent conduct directed at law enforcement personnel. Green insists that he was not shown to have had any connection with

the drug sales occurring on June 11, 12, or 19, or with defendants Rogers and Catlett. He thus maintains that he was prejudiced by being forced to stand trial with defendants accused of other drug activity and with defendant Davis who was caught on videotape during one of the drug sales to Kirk.

"There is a preference in the federal system for joint trials of defendants who are indicted together." *Zafiro v. United States*, 506 U.S. 534, 537, 113 S.Ct. 933, 122 L.Ed.2d 317 (1993). Consequently, a motion for severance is committed to the sound discretion of the district judge. *See United States v. McCoy*, 848 F.2d 743, 744 (6th Cir.1988). A defendant seeking severance at trial from co-defendants bears a strong burden and must demonstrate substantial, undue, or compelling prejudice. *See United States v. Warner*, 971 F.2d 1189, 1196 (6th Cir.1992). In fact, severance is required "only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro*, 506 U.S. at 539, 113 S.Ct. 933.

No such risk has been demonstrated in this case. Despite evidence that certain defendants were involved in multiple acts of criminal wrongdoing, the testimony offered against both Rogers and Green was easily understood by the jury and pointed the finger of guilt unerringly at those defendants. In such a situation, in a case in which the government clearly differentiated the evidence pertaining to each specific crime, the district court cannot be said to have abused its discretion in denying the motions for severance filed by defendants Rogers and Green.

### III. Sufficiency of the Evidence

Three of the defendants, Davis, Duerson, and Green, challenge the sufficiency of the evidence used to convict them of various crimes. In addressing each of these allegations of error, we do not weigh the evidence presented, consider the credibility of witnesses, or substitute our judgment for that of the jury. *See United States v. Hilliard*, 11 F.3d 618, 620 (6th Cir.1993). Instead, we determine merely whether, after viewing the evidence in the light most favorable to the prosecution, and after giving the government the benefit of all inferences that could reasonably be drawn from the testimony, a rational trier of fact could find the elements of the crime beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

Davis argues that the evidence in this case does not support his conviction on the conspiracy charge, in part because Detective Kirk was informed that he would be obligated to deal with Duerson and Green, not Davis, to purchase crack cocaine on June 26, 1996, and because Davis was not involved in the robbery and shootings that ensued. Sufficient evidence does, however, support the inference that Davis was familiar with and in collusion with both Duerson and Green. Upon approaching Kirk, for example, after the one-and-one-half-hour wait, Davis immediately mentioned that he was unable to procure the crack cocaine but that he had located two other sellers who, in combination, could fill Kirk's order. Moreover, after explaining the situation to the detective, Davis turned and discussed matters with Duerson and Green before all three individuals (Davis, Duerson, and Green) again approached Kirk's vehicle, allegedly to effect the sale. Also, while Duerson entered the vehicle, Davis stood with Green on the driver's side of the car. These facts, viewed in the light most favorable to the prosecution, establish beyond a reasonable doubt Davis's guilt on the charge of conspiring with Duerson and Green to distribute crack cocaine on June 26, 1996.

Duerson also raises three challenges to the evidence used to convict him. He first insists that no evidence was offered to indicate that crack cocaine was

actually involved in the June 26 transaction with Kirk and, consequently, that no more than a conspiracy to commit robbery was established. The fact that drugs never changed hands during the transaction does not, however, support Duerson's argument that a drug conspiracy was not proven. The mere discussions among Kirk, Davis, Duerson, and Green are sufficient to establish an agreement among the defendants to combine to distribute crack cocaine. Furthermore, the evidence before the jury was uncontradicted that Duerson did in fact possess a wax cup of crack cocaine, which he pulled from his waistband and exhibited to Kirk during the negotiations for the sale. This challenge to the sufficiency of the evidence used to convict Duerson of conspiracy is, therefore, without merit.

▮ Duerson next argues that his conviction for *stealing* $4000 belonging to the United States should have merged with his conviction for *robbing* Kirk at gunpoint of $4000 belonging to the United States. The government makes no argument contradicting this allegation, nor could it do so legitimately. In order to effect the robbery at gunpoint of $4000 belonging to the United States, Duerson necessarily would had to have also "stolen" that money. Because these two convictions thus punish the same conduct, the offense of stealing the money of the government should have been subsumed into the robbery conviction of both Duerson and Green.

▮ Duerson's final evidentiary challenge suggests that his conviction for using or carrying a firearm in the commission of a drug trafficking offense or crime of violence is not supported by the evidence because the prosecution failed to establish that Duerson was involved in drug activity. This argument is patently without merit. Not only did the trial testimony show that Duerson conspired with Davis and Green to distribute crack cocaine, but the firearm charge of the indictment did not limit itself to drug offenses. Instead, the charge alleged use and carrying of the firearms "in

relation to a crime of violence and a drug trafficking crime, to wit: robbery . . . and conspiracy to distribute cocaine base. . . ." Without question, the evidence also established Duerson's complicity in the robbery of the $4000 and Duerson does not contest that fact.

▮ In a final challenge to the sufficiency of the evidence offered at trial, defendant Green claims that his convictions cannot withstand scrutiny because only Detective Kirk could positively identify him as being present at the crime scene and because Green offered an alibi defense at trial to explain his alleged lack of involvement in the criminal activity. The jury has, however, evaluated the credibility of the witnesses offering conflicting testimony at trial and has chosen to discredit Green's account of his whereabouts at the time of the crimes for which Green was convicted. This allegation of error is thus also without merit.

### IV. Right to Confront Witnesses

▮ In a final issue, Duerson contends for the first time on appeal that his Sixth Amendment right to confront the witnesses against him was violated when an employee of the Drug Enforcement Administration testified at trial regarding a statement that Davis made to police implicating Duerson and Green in the confrontation with Kirk on June 26, 1996. Because Davis did not take the stand at trial and, consequently, was not available for cross-examination, Duerson insists that such testimony should not have been admitted into evidence.

We need not concern ourselves with an analysis of whether such testimony was in fact admitted in violation of Duerson's Sixth Amendment rights because, even if error were committed, such error is harmless beyond a reasonable doubt. The information transmitted to the jury through introduction of Davis's statement—Duerson's and Green's presence at the scene of the shootout and aborted drug sale—was

much more forcefully related by the eye-witness testimony of Kirk and Angela Dillard, both of whom unequivocally identified Duerson as a participant in the questioned activities.

### CONCLUSION

For the reasons set out above, we VACATE the judgment of the district court as to all five defendants and REMAND the case for a properly conducted *Remmer* hearing. If the defendants carry their burden of demonstrating prejudice, they will be entitled to a new trial; otherwise, their convictions and sentences must be reinstated. If the convictions are reinstated, however, the convictions and sentences of defendants Duerson and Green must be corrected so as to reflect that the robbery and theft charges against them necessarily merged.