**Bobby T. SHEPPARD, Petitioner,**

v.

**Margaret BAGLEY, Warden, Respondent.**

No. C–1–00–493.

United States District Court, S.D. Ohio, Western Division.

March 31, 2003.

Jane Pat Perry, Timothy R. Payne, Geoffrey J. Moul, Murray Murphy Moul & Basil, Columbus, OH, for petitioner.

James V. Canepa, Ohio Attorney General, Charles L. Wille, Assistant Attorney General, Capital Crimes Section, Columbus, OH, for respondent.

## DECISION AND ENTRY ADOPTING IN PART AND REJECTING IN PART THE APRIL 23, 2002, DECISION AND ORDER OF THE MAGISTRATE JUDGE, DENYING SHEPPARD'S RENEWED MOTION TO CALL JEFFREY SMALLDON AS A WITNESS AT THE EVIDENTIARY HEARING (DOC. # 53)

RICE, Chief Judge.

This action is before the Court on Petitioner Bobby T. Sheppard's Objections

(Doc. # 55) to the April 23, 2002, Decision and Order of the Magistrate Judge, which denied Sheppard's Renewed Motion to Call Jeffrey Smalldon as a Witness at the Evidentiary Hearing (Doc. # 53). For the reasons assigned, the Court ADOPTS in PART and REJECTS in PART the April 23, 2002, Decision.

## I. *Procedural Background*

On August 27, 1994, Petitioner Bobby T. Sheppard ("Sheppard") was indicted for the August 19, 1994, aggravated robbery and murder of fifty-six-year-old Dennis Willhide, the owner of the C & D Drive-thru beverage store, located in Cincinnati, Ohio. A jury trial was held, which was divided into a guilt phase and a penalty phrase. After the guilt phase, the jury found Sheppard guilty as charged of aggravated robbery and aggravated murder with gun specifications. He was also convicted of death penalty specifications for murder to escape detection or apprehension for another offense, Ohio Rev.Code § 2929.04(A)(3), and murder in the course of a robbery, Ohio Rev.Code § 2929.04(A)(7).

During the penalty phase, Petitioner presented the expert testimony of Dr. Jeffrey Smalldon, a psychologist, as evidence in support of mitigation. Dr. Smalldon diagnosed Sheppard with paranoid schizophrenia, and he testified that Sheppard suffered from that mental illness at the time of the offense. After the testimony in the penalty phase was completed and before the jury retired to deliberate, Juror Stephen Fox ("Fox") telephoned his former landlord, Ms. Helen Jones ("Jones"), whom he believed was a psychologist, seeking a "boiled down" definition of paranoid schizophrenia (Tr. Vol. V at 1256). Jones told Fox that people with paranoid schizophrenia are "just not really in touch with reality." (*Id.* at 1256–57). Fox did not relay his conversation with Jones to the other jurors. After deliberations, the jury recommended death.

Between the time that the jury reached its verdict and the date that the trial judge had set to pronounce his independent sentence, Juror Stephen Fox had a party at his home. He invited his neighbor, Assistant County Prosecutor Anne Flanagan ("Flanagan"), and he told Flanagan of his conversation with Jones, explaining that "the attorneys didn't give us enough information." Flanagan informed her supervisors, who alerted the trial judge, Judge Thomas H. Crush, on May 30, 1995, the date the judge had set to pronounce sentence.

Upon learning of the misconduct by Fox, the trial judge brought him into chambers, and interviewed him regarding his conduct. Fox admitted calling Jones for a definition of paranoid schizophrenia. He indicated that Jones "didn't tell me anything that I didn't know. It was just, I guess that it was something like that I just needed to hear somebody basically confirm what I thought already." (Tr. Vol. V at p. 1257). At the conclusion of his conversation with Fox, the trial judge concluded that there was no reason to delay sentencing, reasoning:

[Fox was] not swayed towards the prosecution side by what he heard. It did not change his opinion. And that he would have reached the same opinions anyway. And he did not discuss it with the other jurors.

So I don't see any prejudicial harm. Although, of course, obviously there is misconduct. But, so, in other words, there is no reason to delay the sentencing.

(Vol. II at p. 10). Thereafter, the trial court sentenced petitioner to imprisonment for the aggravated robbery and the gun specifications, and to death for the aggra-

vated murder. On June 13, 1995, Sheppard filed a Motion for New Trial, which was denied on October 10, 1995, without an evidentiary hearing. Sheppard also pursued post-conviction relief, which was denied.

On June 20, 2000, Sheppard filed a Petition for Writ of Habeas Corpus (Doc. # 4). On November 28, 2000, Magistrate Judge Merz permitted the Petitioner to take the depositions of Fox, Jones, and Flanagan, as well as three other jurors (Doc. # 21). The Magistrate Judge made no ruling, at that time, as to whether Sheppard was entitled to an evidentiary hearing on the juror misconduct issue.

On May 21, 2001, Petitioner filed a Motion for an Evidentiary Hearing on his claims of juror misconduct and ineffective assistance of appellate counsel (Doc. # 30). With regard to the juror misconduct claim, Sheppard argued that the trial court's investigation was cursory and inadequate, and that the depositions of Fox and Jones indicated that the information given by Jones differed from that presented at trial and that it affected Fox's verdict (id.) On February 19, 2002, the Magistrate Judge sustained the Motion for an Evidentiary Hearing, to the extent that Sheppard sought to present the testimony of Fox, Jones and Flanagan (Doc. # 42), stating:

> In support of his Seventh Ground for Relief—juror misconduct—Petitioner seeks to introduce testimony by Juror Fox, Helen Jones (the person Fox called for a definition of paranoid schizophrenia), Anne Flanagan (the prosecutor to whom Fox admitted making the call), and Jeffrey Smalldon (the psychologist who testified in mitigation at the trial). The Court is not prepared to rule at this point whether the failure to present some or all of this information in the state court process is attributable to Petitioner, which would make the information inadmissible under *Keeney [v. Tamayo–Reyes,* 504 U.S. 1, 112 S.Ct. 1715, 118 L.Ed.2d 318 (1992) ], *supra.* A determination of what more, if anything, could have been done to obtain and admit this information can best be made in the context of an evidentiary hearing which explores that question.[1]

> Accordingly, the Motion for Evidentiary Hearing on the Seventh Ground for Relief is GRANTED insofar as it seeks to admit testimony from Fox, Jones, and Flanagan, all of whom are fact witnesses on the juror misconduct claim.

(Doc. # 42 at 3) (footnote in original). The Magistrate Judge denied, without prejudice, that portion of Sheppard's Motion for Evidentiary Hearing which proposed to call Dr. Smalldon, stating:

> Jeffrey Smalldon, however, does not appear to be a fact witness on this claim, and Petitioner has not stated what it is that Mr. [sic] Smalldon will testify to. This Court has regularly required that habeas petitioners set forth the testimony expected to be given by witnesses and the reasons why that testimony was not presented in the state courts.

(*Id.* at 3–4) He further noted that any renewed motion should satisfy (1) the

---

1. At least in some habeas corpus cases, the question of what efforts were or could have been made to introduce evidence in the state court process is likely to require the district court to consider evidence which was not itself presented to the state courts, i.e., evidence to satisfy the Keeney threshold. Such evidence is most appropriately considered at an "evidentiary hearing," i.e., a hearing where the district court takes evidence from witnesses subject to cross-examination, etc. It seems unlikely that Congress intended to preclude this sort of hearing on evidence when it enacted § 2254(e)(2). That statute seems instead directed at preventing or curbing trails de novo of factual issues tried or which could have been tried in the state courts.

"gateway" requirements for expert testimony of *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), and *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999), and (2) the due diligence requirements for 28 U.S.C. § 2254(e)(2), as discussed in *Michael Williams v. Taylor*, 529 U.S. 420, 120 S.Ct. 1479, 146 L.Ed.2d 435 (2000) (Doc. # 42).[2]

Petitioner renewed his motion on March 26, 2002, arguing that both requirements had been met (Doc. # 48). He indicated that Dr. Smalldon was presented as an expert during the state court trial, and that he would provide testimony on how Jones' definition of paranoid schizophrenia conflicted with his own expert trial testimony and on how it was grossly inaccurate and misleading. Petitioner further argued that the failure to develop the record further in the state court was due to the trial judge's failure to conduct an adequate investigation of the juror misconduct, and that he is excused from presenting Dr. Smalldon's testimony during his request for post-conviction relief, because the presentation of his juror misconduct claim was prohibited by Ohio's criminal *res judicata* doctrine. On April 23, 2002, the Magistrate Judge again denied Sheppard's request to present Dr. Smalldon's testimony, on the ground that Sheppard had not satisfied the due diligence requirement of 28 U.S.C. § 2254(e)(2) (Doc. # 53).[3] In that Decision, Magistrate Judge Merz concluded that the trial judge had satisfied his obligation to investigate the allegations of juror misconduct. Turning to Petitioner's conduct, the Magistrate Judge found that there was

> nothing in the record to explain why Petitioner had failed to submit the testimony he now proposes to offer from Dr. Smalldon by way of affidavit with the Motion for New Trial. His counsel already had a professional relationship with Dr. Smalldon and the inconsistency, if any, between what Smalldon said at trial and what Jones told Fox would have been as evident, and as evidently relevant, then as now. The Court concludes Petitioner did not exercise due diligence required by *Michael Williams* when he failed to present Dr. Smalldon's testimony with the Motion for New Trial.

(Doc. # 53 at 5).

Pending before the Court are Petitioner's Objections to the Magistrate Judge's Decision of April 23, 2002, Denying his Renewed Motion to Call Dr. Smalldon as a Witness at the Evidentiary Hearing (Doc. # 55). For the reasons assigned, the Court ADOPTS in PART and REJECTS in PART the Magistrate Judge's Decision of April 23, 2002.

2. The Court notes that, in the same Decision, the Magistrate Judge overruled Petitioner's request to expand the record to include a Declaration from Dr. Smalldon, in which he opined that the "boiled down" definition of paranoid schizophrenia given to Fox by Jones was an "inaccurate, grossly misleading definition, and that it was very seriously at odds with the more detailed, far more nuanced description" given during his trial testimony (Doc. # 30, Ex. A). The Magistrate Judge ruled that the Declaration was uncross-examined hearsay and "Dr. Smalldon will be present to testify live at the evidentiary hearing. To the extent information in the Declaration is material to the Seventh Ground for Relief, he may be examined on it at that time." (Doc. # 42). The Court further notes that Petitioner did not file any Objections to the February 12, 2002, Decision (see Doc. # 44).

3. The Magistrate Judge agreed with Petitioner's argument that there was no lack of due diligence in Petitioner's failure to present Dr. Smalldon's testimony on his petitions for post-conviction relief (Doc. # 53 at 7–8). Petitioner has not objected to that portion of the Decision.

II. *Analysis*

■ Petitioner filed his application for habeas relief subsequent to April 24,1996, and, thus, it is subject to the Antiterrorism and Effective Death Penalty Act ("AEDPA"). *Woodford v. Garceau,* —— U.S. ——, 123 S.Ct. 1398, 155 L.Ed.2d 363 (2003). Section 2254(e) of Title 28 "controls whether [petitioner] may receive an evidentiary hearing in federal court on the claims that were not developed in the [state] courts." *Williams v. Taylor,* 529 U.S. 420, 120 S.Ct. 1479, 146 L.Ed.2d 435 (2000). Section 2254(e)(2) provides:

> (2) If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that—
>
> (A) the claim relies on—
>
>> (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
>>
>> (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
>
> (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

*Id.* The opening clause focuses on the petitioner's efforts to develop the underlying facts of his constitutional claim in the state courts. "Failure to develop the factual basis of a claim is not established unless there is lack of diligence, or some greater fault, attributable to the prisoner or the prisoner's counsel." *Michael Williams,* 529 U.S. at 432, 120 S.Ct. 1479. "The

question is not whether the facts could have been discovered but instead whether the prisoner was diligent in his efforts . . . Diligence for purposes of the opening clause depends upon whether the prisoner made a reasonable attempt, in light of the information available at the time, to investigate and pursue claims in state court. . . ." *Id.* at 435, 120 S.Ct. 1479. The Supreme Court has also stated, "Diligence will require in the usual case that the prisoner, at a minimum, seek an evidentiary hearing in state court in the manner prescribed by state law." *Id.* at 437, 120 S.Ct. 1479; *Ashworth v. Bagley,* 2002 WL 485003 (S.D.Ohio Mar. 28, 2002).

■ In his Objections to the Magistrate Judge's Decision (Doc. # 55), Sheppard asserts that § 2254(e) is not a bar, because there was no lack of reasonable diligence on his part in the present case. He asserts that the failure to call Dr. Smalldon on the issue of juror misconduct was the fault of the state trial judge, not of himself. He contends that upon learning of the juror's misconduct during the penalty phase, it was the trial judge's constitutional obligation to investigate the misconduct and thereby develop relevant evidence on the issue of prejudice (*id.* at 1).[4] Accordingly, Petitioner challenges the Magistrate Judge's conclusion that the trial judge met that obligation.

■ The nature and scope of the investigation required when jury misconduct is credibly alleged was set forth by the Supreme Court in *Remmer v. United States,* 347 U.S. 227, 74 S.Ct. 450, 98 L.Ed. 654 (1954), a case which involved a juror who was offered money in exchange for a favorable verdict. *Id.* The Supreme Court stated that, when external influences upon a jury are involved, a hearing is required

---

4. As noted by Magistrate Judge Merz in his Decision, Plaintiff has *not* argued, and likewise does not argue in his objections, that *his* efforts constitute due diligence.

to "determine the circumstances, the impact thereof upon the juror, and whether or not it was prejudicial, in a hearing with all interested parties permitted to participate." *Id.* at 230, 74 S.Ct. 450; *United States v. Corrado,* 227 F.3d 528, 536 (6th Cir.2000). Thus, the trial judge has duty, per *Remmer,* to have a hearing to "afford the defendant an opportunity to establish actual bias." *U.S. v. Davis,* 177 F.3d 552, 557 (6th Cir.1999). The trial judge must order a hearing *sua sponte* if not requested by the defendant. *Id.* Although the *Remmer* Court placed the burden on the government to demonstrate that the contact was harmless, the Supreme Court's subsequent decision in *Smith v. Phillips,* 455 U.S. 209, 102 S.Ct. 940, 71 L.Ed.2d 78 (1982), indicates that the defendant bears the burden of proving juror bias. *Corrado,* 227 F.3d at 536. Moreover, no presumption of prejudice arises merely from the fact that improper conduct occurred. *Davis,* 177 F.3d at 557.

Where the jury, as group, was potentially influenced by external information, the Sixth Circuit has required individualized questioning of jurors to determine who had received that information and the extent of its influence. In *Corrado, supra,* the court learned from counsel that some jurors had been approached by an individual in an attempt to influence their verdict. The court responded by issuing broadly worded questions to the jury as a group: "has anyone outside the jury tried to influence you in any way about this case," "has anyone on the jury tried to influence what you will do . . .," and was there any reason why the juror believes he could not continue as a fair and impartial juror. The court further instructed that any jurors with affirmative responses should write a note to the Court. Upon review, the Sixth Circuit held that the generalized inquiry was an inadequate evidentiary hearing. It remanded for an appropriate hearing, stating

that the defendants should have the opportunity to question the jurors individually and under oath about the extent of their interaction, if any, with the person attempting to influence the jury, and the defendants should be permitted to investigate the impact of the news reports regarding the arrest of that individual.

Likewise, in *Davis, supra,* a juror, Estes, sent a note to the trial judge, indicating that he feared for his safety and for his business based on a conversation with one of his employees, who indicated that members of the community were aware of his jury service. Estes revealed, when questioned by the judge, that he had expressed his fears to the other jurors. Estes was dismissed as an alternate juror, but no mistrial was declared and the judge failed to issue a cautionary instruction to the other jurors that anything learned from Estes was not to be considered. The Sixth Circuit concluded that the trial judge erred, because he did not inquire of the remaining jurors whether they had been influenced by Estes' remarks. *Id.; see also United States v. Rigsby,* 45 F.3d 120, 124 (6th Cir.1995)(where jurors as a group have extraneous contacts, "full blown" hearing required). None of these cases, however, indicates that a trial judge must, *sua sponte,* call additional fact witnesses to determine whether extraneous influences were presented and whether they were prejudicial.

In the present case, Judge Crush investigated the allegations of extrinsic influence by interviewing Juror Fox individually. As indicated by the May 30, 1995, transcript and as stated by the trial judge, Fox indicated that Jones' statements merely confirmed what he was thinking, that he was not swayed towards the prosecution, that it did not change his opinion, and that he did not discuss his conversation with Jones with the other jurors. In

addition, the prosecution and defense counsel were present during this interview and asked questions of Fox. At the conclusion of this interview, there was no indication that any other jurors had received any external information, and there was no basis to believe that Sheppard had been prejudiced by that external information. Thus, Judge Crush met *Remmer*'s obligations and his investigation was adequate, as a matter of law. Consequently, the Court disagrees with Sheppard that the failure to develop the record further falls on the shoulders of the trial judge, and the Court agrees with the Magistrate Judge that Judge Crush conducted an adequate *Remmer* hearing, in light of the circumstances. That portion of the Magistrate Judge's Decision is therefore ADOPTED.

■ Having concluded that the alleged failure to develop fully the factual basis for Petitioner's juror misconduct claim does not rest with the trial judge's failure to conduct an adequate *Remmer* hearing, the Court now turns to the issue of whether the Magistrate Judge properly concluded that Dr. Smalldon should not be permitted to testify at the evidentiary hearing, on the ground that Petitioner failed to satisfy the due diligence requirements of § 2254(e)(2). In his Decision of February 19, 2002, the Magistrate Judge concluded that he needed testimony on the issue of juror misconduct, including the threshold issue of due

diligence. As quoted above, he specifically stated that he was "not prepared to rule at this point whether the failure to present some or all of this information [the testimony of Fox, Jones, Flanagan *and Smalldon*] in the state court process is attributable to Petitioner, which would make the information inadmissible under *Keeney [v. Tamayo–Reyes*, 504 U.S. 1, 112 S.Ct. 1715, 118 L.Ed.2d 318 (1992) ], *supra*." (Doc. # 42 at 3). He further stated that "a determination of what more, if anything, could have been done to obtain and admit this information," in other words, Petitioner's due diligence, "can best be made in the context of an evidentiary hearing which explores that question." [5] (*Id.*) During the evidentiary hearing, the Magistrate Judge heard from Fox, Jones and Flanagan, with no inquiry prior to the hearing as to whether Plaintiff had satisfied his due diligence with regard to their anticipated evidence. Although the Magistrate Judge indicated that due diligence would be, in part, determined based on evidence gathered during the evidentiary hearing, he ruled, prior to that hearing, that Dr. Smalldon could *not* testify due to Plaintiff's lack of due diligence regarding his testimony (Doc. S).

Regardless of the rationale for the evidentiary hearing,[6] once the Magistrate Judge concluded that such hearing would be held, the Court sees no reason why all

5. The Court notes that the purpose of the evidentiary hearing, held on June 23–24, 2002, is unclear, based on the Magistrate Judge's ruling of February 19, 2002. The Decision could be read to state either that an evidentiary hearing on due diligence alone would be held, or that an evidentiary hearing on the merits of the juror misconduct issue (as well as his other claims), including the threshold issue of due diligence, would be held. The Court further notes that the evidentiary hearing concerned his ineffective assistance of appellate counsel claim as well as the juror misconduct claim.

6. Upon review of the hearing testimony, it is most likely that the evidentiary hearing focused on the merits of Petitioner's juror misconduct claim. To the extent that the hearing concerned Plaintiff's due diligence, there is little in the hearing transcript that enlightens the Court on that issue. Petitioner's trial counsel did not testify as to his efforts to obtain information in support of his Motion for New Trial, nor his efforts to obtain a hearing on the juror misconduct in the trial court.

relevant evidence should not have been heard, particularly in light of the fact that he had indicated that due diligence would be explored in the evidentiary hearing. In particular, the Court can discern no reason why Petitioner's failure to submit an affidavit from Dr. Smalldon along with his Motion for a New Trial should be distinguished from his apparent failure to submit detailed affidavits, *i.e.*, mirroring the testimony in the evidentiary hearing, from Fox, Jones and Flanagan. With regard to Fox, the Magistrate Judge's Decision indicated:

> Mr. Ranz [the Petitioner's trial counsel] indicated [to the trial court] his intention to file a motion for a new trial. There was then extensive discussion on the record about preparation for that motion. Mr. Ranz indicated that he believed he had a right to contact other jurors, but had no present [plan] for doing so. The judge indicated the defendant's attorneys would have to notify the prosecutor of any witnesses they intended to offer by affidavit so that the prosecutor could subpoena them, and Mr. Ranz agreed. When he filed the Motion for New Trial, he filed only the in-chambers colloquy just referred to and his own affidavit. . . .
>
> Thus at the time the Motion for New Trial was filed, defense counsel knew that the trial court was expecting affidavits, and there was an opportunity to present affidavits with the motion, as well as a possible opportunity for a hearing.

(Doc. # 53 at 4). Based on this reasoning, Petitioner could also have interviewed and obtained another affidavit from Fox.

As for Jones, on August 29, 1995, Petitioner filed an affidavit from her in support of his Motion for New Trial (Vol. II at p. 40), in which Jones stated:

> I am a consulting psychologist in the State of Ohio. On or about May 16, 1995[,] I received a phone call from Stephen Fox, a friend, asking me for information on paranoid schizophrenia. I gave Mr. Fox a brief description and explanation of schizophrenia. Some time later I found out that Mr. Fox was sitting as a juror at the time he called. At the time of the phone call, the reason for the call was not discussed.

(*Id.*) The affidavit was notarized by Mr. Robert Ranz, counsel for Petitioner. Thus, as with Smalldon, it is apparent that Petitioner's counsel had contact with and obtained information from Jones prior to the state court's ruling on its Motion for New Trial. Although Petitioner had a more substantial relationship with Smalldon, the Court can see no reason why Jones should have been permitted to present additional testimony, *i.e.*, evidence that was not presented to the state court, in the evidentiary hearing before the Magistrate Judge when Smalldon was not. In other words, the reasons for precluding Smalldon's testimony, *i.e.*, that Petitioner could have attached an affidavit from him to the Motion for New Trial, may be equally applicable to the witnesses who were permitted to testify.[7] In addition, assuming that the additional evidence of Fox and Jones may be considered, the Court sees no reason why Petitioner should not have been permitted to provide the evidence of Dr. Smalldon as it concerns that new testimo-

---

**7.** Although the Court has mentioned evidence from the record which suggests that Petitioner failed to exercise due diligence, it notes that there is additional information in the record from which it could be argued that Petitioner did attempt to develop more fully the factual basis for his juror misconduct claim in the state court. The Court emphasizes that it states no opinion and makes no findings as to whether Petitioner, in fact, satisfied his due diligence obligation in general or with regard to Dr. Smalldon specifically.

ny, *i.e.,* an analysis of Jones' definition of paranoid schizophrenia, as she describes it in her deposition and hearing testimony.

Accordingly, since the Magistrate Judge concluded that an evidentiary hearing would be held on the issue of due diligence, the Court sees no reason why Dr. Smalldon's evidence should have been excluded prior to that hearing. The Magistrate Judge has permitted Petitioner to present potentially new information by Fox, Jones and Flanagan, without any discussion as to why their evidence was admissible when Dr. Smalldon's was not. Accordingly, the Court REJECTS the Decision of the Magistrate Judge, Denying Petitioner's Renewed Motion to Call Dr. Smalldon as a Witness at the Evidentiary Hearing (Doc. # 53), to the extent that it denies Dr. Smalldon the opportunity to testify, on the ground the Petitioner failed to satisfy his due diligence obligations.

For the foregoing reasons, the Court ADOPTS in PART and REJECTS in PART the April 23, 2002, Decision of the Magistrate Judge, Denying Petitioner's Renewed Motion to Call Dr. Smalldon as a Witness at the Evidentiary Hearing. Specifically, the Court concludes that the trial judge satisfied his obligation under *Remmer* to investigate the misconduct by means of his in-chambers hearing with Fox. Therefore, any failure to satisfy the due diligence requirements of § 2254(e)(2) cannot be based on that judicial conduct, and the Court adopts the Magistrate Judge's Decision on this issue. The Court rejects the Magistrate Judge's Decision to disallow the testimony of Dr. Smalldon, on the ground that Petitioner failed to offer an affidavit by Dr. Smalldon with his Motion for New Trial. The Magistrate Judge is directed to permit the testimony of Dr. Smalldon for purposes of the evidentiary hearing. The Court makes no conclusions

as to whether Petitioner satisfied his due diligence obligation, as set forth in *Michael Williams,* with regard to any aspect of his juror misconduct claim.