*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 05a0414p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

No. 04-1655

IAN AZA JEROME OWENS,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Western District of Michigan at Grand Rapids.
No. 02-00226—David W. McKeague, Circuit Judge.

Argued: September 20, 2005

Decided and Filed: October 13, 2005

Before: COLE and ROGERS, Circuit Judges; BECKWITH, Chief District Judge.[*]

_____

## COUNSEL

**ARGUED:** Mark Diamond, New York, New York, for Appellant. Jennifer L. McManus, ASSISTANT UNITED STATES ATTORNEY, Grand Rapids, Michigan, for Appellee. **ON BRIEF:** Mark Diamond, New York, New York, for Appellant. Jennifer L. McManus, ASSISTANT UNITED STATES ATTORNEY, Grand Rapids, Michigan, for Appellee.

_____

## OPINION

_____

R. GUY COLE, JR., Circuit Judge. Defendant-Appellant Jerome Ian Owens appeals his conviction for armed bank robbery on the grounds that (1) the district court declined to investigate the possibility of jury bias, (2) prosecutorial misconduct deprived him of a fair trial, (3) the evidence underlying two counts of the indictment was insufficient, (4) the district court erred in its evaluation of restitution, and (5) he is entitled to remand for resentencing under *United States v. Booker*, 125 S. Ct. 738 (2005). For the reasons that follow, this Court **AFFIRMS** the conviction and order of restitution but **REMANDS** for resentencing in light of *Booker*.

_____

[*] The Honorable Sandra S. Beckwith, Chief United States District Judge for the Southern District of Ohio, sitting by designation.

1

## I.

Owens was arrested on September 21, 2002 in connection with a string of bank robberies. Owens was identified by his mother from a security photograph taken during the fourth and final robbery. Owens was indicted on, and pleaded not guilty to, fourteen related counts.

Over the course of the resulting trial, the Government put on evidence that Owens planned one robbery and physically participated in three others. Most of Owens's accomplices testified to committing a robbery alongside Owens or testified that Owens admitted to them that he had committed a specific robbery.

The accomplices largely corroborated one another. For instance, Damon Johnson, a participant in the fourth robbery, testified that he had once loaned Owens a gun that Owens returned stained by red dye. When Johnson asked about it, Owens described his participation in another of the four robberies. In that robbery, a dye pack exploded and a gun discharged. Lionel Sorrels, another accomplice, testified that Owens independently described a robbery wherein a gun discharged and a dye pack exploded.

Bank employees, customers, and law enforcement authorities confirmed certain details provided by the co-perpetrators about the various robberies. Stevie Jones described a robbery he committed with Owens wherein Owens pushed a woman to the ground and referenced Flint, Michigan with the words "This is how we do it in Flint." Bank employees and customers confirmed these two details. Adika Sutton claimed that she talked with Owens via a Nextel phone during a robbery on November 28, 2001, which Owens was alleged to have planned. Officer Valentine testified that when Sutton and her accomplice were caught driving away from the scene, police recovered a Nextel phone.

Owens denied any involvement in the November 2, 2000, May 10, 2001, and November 28, 2001 robberies. He admitted participation in the February 15, 2002 robbery, but claimed that he was coerced by the other robbers. The other perpetrators denied that they coerced Owens and bank employees singled out Owens as the leader of the February 15 robbery.

The trial did have several notable anomalies. First, a juror passed a note to the judge asking whether Owens could present a danger to the jury because "[h]e was staring at [the juror] uncomfortably." Defendant's counsel asked the court to question the juror about the note but the court declined. Upon agreement by both parties, the court instructed the courtroom deputy to advise the jury that "to the best of the Court's knowledge and all the parties' knowledge, [Owens] does not pose a security risk to anyone." Second, the court admonished a prosecutor for commenting on the credibility of a Government witness during his closing argument. Finally, a prosecutor asked the jury during her closing argument if they had ever been the victims of a crime and, if so, how they felt about Owens's claim that he was a victim.

On February 5, 2004, the jury convicted Owens on all but one of the fourteen counts charged. The court sentenced him to 1,411 months in prison based on the United States Sentencing Guidelines. The court adjusted the sentence upward for obstruction of justice and evidence of leadership. Of the 1,411 months, 1,260 were part of a statutory minimum imposed by 18 U.S.C. § 924(c). The court also ordered Owens to pay $229,900 in restitution under the Victim and Witness Protection Act.

Owens now appeals his conviction, sentence, and the order of restitution. We have jurisdiction to hear Owens's timely appeal under 28 U.S.C. § 1291.

## II.

### A. Jury Bias

When a juror passed a note to the district judge articulating her discomfort with Owens for "staring at her," Owens's trial counsel requested that the juror be investigated for the possibility of bias. The district

judge denied the request but assured the jury that Owens did not present a danger.  We review the district judge's decision not to question the juror for abuse of discretion. *United States v. Davis*, 177 F.3d 552, 557 (6th Cir. 1999).

In *Remmer v. United States*, the Supreme Court held that a trial court, faced with an indication of jury bias, must conduct "a hearing with all interested parties permitted to participate." 347 U.S. 227, 230 (1954).  When a district judge refuses to conduct a *Remmer* hearing under such circumstances, we routinely remand. *See, e.g., Mason v. Mitchell*, 320 F.3d 604, 636 (6th Cir. 2003); *Davis*, 177 F.3d 552; *United States v. Zelinka*, 862 F.2d 92 (6th Cir. 1988).  Yet a defendant must do more than simply raise the possibility of bias. *See United States v. Herndon*, 156 F.3d 629, 635 (6th Cir. 1998).  Rather, a district court must conduct a *Remmer* hearing whenever the defense raises a "colorable claim of extraneous influence." *Davis*, 177 F.3d at 557.

We have defined an "extraneous influence" as "one derived from specific knowledge about or a relationship with either the parties or their witnesses." *Herndon*, 156 F.3d at 636.  Examples include prior business dealings with the defendant, *id.* at 635, applying to work for the local district attorney, *Smith v. Phillips*, 455 U.S. 209, 209 (1982), conducting an out of court experiment, *see Mason*, 320 F.3d at 638, and discussing the trial with an employee. *Davis*, 177 F.3d at 557.

When a defendant stares at a juror during the course of his trial, however, he has introduced no outside contact with, nor special information about, a party or witness.  In *United States v. Lopez*, 271 F.3d 472 (3d Cir. 2001), a juror sent a note asking the court to instruct the defendant not to stare at her because, while it did not bother her, she "didn't like it." *Id.* at 489.  The Third Circuit upheld the district judge's decision not to strike or question the juror because the defendant's conduct did not constitute an outside influence. *Id.*  Although this case differs from *Lopez* in that here the juror expressed fear, the juror's emotional state does not make the conduct at issue any more extraneous.

To hold otherwise, moreover, is to create incentives for a defendant to make his or her jury uncomfortable.  Although it was never determined whether Owens actually stared at the preoccupied juror during his trial, a defendant is not automatically entitled to a *Remmer* hearing because he has managed to insult or frighten a juror. *Cf. United States v. Reesor*, 2001 WL 523931, *6 (6th Cir. 2001) (unpublished opinion) (upholding the denial of a *Remmer* hearing where defendant's own conduct during the course of the trial was the source of the implied bias).

Ultimately, the abuse of discretion standard is a highly deferential one. *See Hardyman v. Norfolk & Western Railway*, 243 F.3d 255 (6th Cir. 2001) ("[D]eference to the district court's decision is the 'hallmark of abuse of discretion review.'") (quoting *General Electric v. Joiner*, 522 U.S. 136, 143 (1997)).  This Court should only find an abuse if it is "firmly convinced that the district court erred." *Id. Cf. Lopez*, 271 F.3d at 489-90 (noting that the trial judge was in the best position to determine whether a *Remmer* hearing was necessary).

We conclude that Owens's staring was not an extraneous influence, and we accordingly affirm the district court's refusal to question the juror who authored the note.

## B.  Prosecutorial Misconduct

*1.     Claim of improper challenge to defense witness credibility.*

Defense counsel objected when, during closing argument, one prosecutor said that defense witness LaShawn Winston had "an incentive to make a deal with the defendant" because he might be a witness at her upcoming trial.  When cross-examined, the witness had specifically denied entering into a *quid pro quo* with Owens.  The trial judge nevertheless ruled that the prosecutor's comment constituted fair argument. We review allegations of prosecutorial misconduct to which trial counsel objected *de novo. United States v. Barnett*, 398 F.3d 516, 523 (6th Cir. 2005).

"A prosecutor may not express a personal opinion concerning . . . the credibility of a trial witness" because to do so "exceeds the legitimate advocate's role by improperly inviting the jury to convict on a basis other than a neutral independent assessment of the record proof." *Caldwell v. Russell*, 181 F.3d 731, 737 (6th Cir. 1999), *abrogated on other grounds by Mackey v. Dutton*, 217 F.3d 399, 406 (6th Cir. 2000). Counsel may argue for a reasonable inference that a witness is not credible, however, assuming there exists evidence from which to so infer. *United States v. Collins*, 78 F.3d 1021, 1040 (6th Cir. 1996); *United States v. Veal*, 23 F.3d 985, 990 (6th Cir. 1994).

In this case, there was sufficient evidence to support the prosecutor's comments. Stevie Jones testified *inter alia* that Winston and Owens robbed at least one bank together before Winston admitted that she was under investigation for another, unsolved bank robbery. If credited, these facts alone support the inference that Winston had some incentive to lie, which is all the prosecution argued. Accordingly, we affirm the district court.

2.          *Claim of improper vouching for witness for prosecution.*

During closing argument, one prosecutor referred to the plea agreements signed by several Government witnesses, Owens's accomplices in the robberies, which condition federal immunity on their truthful testimony at trial. In apparent response, the judge said, "I'm afraid you are coming dangerously close here to vouching." Because defense counsel did not object at the time, we review the claim of improper vouching for plain error. *United States v. Carroll*, 26 F.3d 1380, 1383 (6th Cir. 1994). To establish plain error, Owens must show (1) the existence of an error, (2) that is plain, (3) that substantially affects the rights of the defendant, and (4) that substantially affects the fairness of and integrity of the proceedings. *United States v. Leachman*, 309 F.3d 377, 386 (6th Cir. 2002).

The prosecutor uttered his statements in response to defense counsel who, in her closing, suggested that each Government witness had "some motivation" to testify falsely in light of an "obligation" or "plea agreement." When a defendant attacks the credibility of a government witness for signing a plea agreement, the prosecution is entitled to refer to the agreement in rebuttal. *See United States v. Francis*, 170 F.3d 546, 550 (6th Cir. 1999) ("The prosecutor may elicit testimony about [a plea's] terms . . . and even refer to the plea agreement of a government witness in an attempt to deflect defense counsel's use of the agreement to attack the witness's credibility.").

Even where the defense did not mention the plea agreement, this Court condones its reasonable use by the prosecution. *See United States v. Trujillo*, 376 F.3d 593 (6th Cir. 2004). In *Trujillo*, for instance, the Government revealed the terms of two witnesses' plea agreements; among the conditions of the plea were that the witness testify truthfully at trial. Because "the prosecutor did not offer any personal observations or opinions as to the veracity of either [witness,] nor . . . place the prestige of the government behind [witness] credibility" this Court found that "the Government did not engage in improper vouching." *Id.* at 608-09.

Following its admonishment, furthermore, the trial court reminded the jurors that they, not the prosecutor, were the trier of fact. The prosecutor himself repeatedly echoed the judge on this point stating, "You twelve are the judges . . . all I can do is highlight the facts and the argument." An immediate instruction by the trial court mitigates otherwise improper vouching. *See Carroll*, 26 F.3d at 1387 (prosecution's vouching "might have been reversible error, had the trial court not immediately instructed the jury that all assertions are to be made from the evidence").

Generally speaking, "improper vouching includes either blunt comments or comments that imply that the prosecutor has special knowledge of facts not in front of the jury." *Francis*, 170 F.3d at 550 (internal citations omitted); *see, e.g., Carroll*, 26 F.3d 1380, 1387 (holding the prosecutor's statement–"I submit to you that [the witnesses] are credible"–improper). The prosecutor in the instant case merely referred to the plea agreement, per his right. We therefore find no ground for reversal.

*3.        Claim of improper pandering to jury prejudice.*

A second prosecutor speculated during her closing that some of the jurors had "probably been the victims of crimes." She asked the jurors how it made them feel that "the defendant in this case wants [them] to think of him as the victim." She went on to question the plausibility of Owens's claim of duress in the robbery where he was caught on tape. Defense counsel did not object at the time. As with his claim of vouching, therefore, we review Owens's claim of pandering for plain error. *Carroll*, 26 F.3d at 1383.

Even in a straightforward case, improper pandering may furnish grounds to vacate and remand. *See, e.g., Boyle v. Martin*, 201 F.3d 711 (6th Cir. 2000). Yet Owens "bears the burden of showing that the prosecutorial misconduct was so 'especially flagrant that it constitutes plain error.'" *United States v. Modena*, 302 F.3d 626, 635 (6th Cir. 2002) (quoting *United States v. Carter*, 236 F.3d 777 (6th Cir. 2001)).

This Court determines flagrancy by examining four factors: (1) whether the statements tended to mislead the jury or prejudice the defendant, (2) whether the statements were isolated or among a series, (3) whether the statements were deliberate, and (4) the total strength of the evidence against the accused. *Boyle*, 201 F.3d at 711. Although a single prosecutorial misstep can on occasion warrant reversal, s*ee, e.g., Carroll*, 26 F.3d at 1387, the second of these four factors has proved particularly salient. *See Pritchett v. Pitcher*, 117 F.3d 959, 964 (6th Cir. 1997); *United States v. Thomas*, 728 F.2d 313, 320 (6th Cir. 1984) ("To warrant a new trial ... prosecutorial misconduct 'must be so pronounced and persistent that it permeates the entire atmosphere of the trial.'") (quoting *United States v. Lichenstein*, 610 F.2d 1272, 1281 (5th Cir. 1980)); *cf. United States v. Beverly*, 369 F.3d 516, 543 (6th Cir. 2004) ("In examining prosecutorial misconduct, it is necessary to view the conduct at issue within the trial as a whole.").

Not only was the comment at issue isolated, it is not clear from the record whether the comment was even calculated to prejudice the jurors against Owens: it may have been calculated to cast doubt on Owens's claim of duress. Further, the evidence against Owens, especially with respect to his defense of duress, was overwhelming. Each of his collaborators denied that Owens was under duress. The customers and employees of the bank, moreover, testified that Owens appeared to be the leader of the February 15 robbery. In light of the trial as a whole and the evidence against him, Owens has not shown that the prosecutor's comment was flagrant. *Cf. Modena*, 302 F.3d at 634 (prosecution's analogous comment–"We can all take some satisfaction in the investigation and prosecution of [the defendant.] But we are not finished. We're not finished until this verdict is returned"–not flagrant). Accordingly, we do not find plain error by the district court.

## C.  Sufficiency of Evidence

Owens questions the sufficiency of evidence supporting his conviction on Counts Four and Five of the indictment. This Court reviews such a challenge *de novo*, *see United States v. Knipp*, 963 F.2d 839, 842 (6th Cir. 1992), but views the evidence in the light most favorable to the prosecution. *See United States v. Tocco*, 200 F.3d 401, 424 (6th Cir. 2000). Indeed, a defendant bears a "very heavy burden" when he challenges the sufficiency of evidence, *United States v. Spearman*, 186 F.3d 743, 746 (6th Cir. 1999), lest the matter of his guilt be re-litigated.

Counts Four and Five relate to the robbery of the Michigan National Bank on May 10, 2001. The evidence presented at trial was sufficient to support a conviction. Stevie Jones–Owens's friend and subsequent bank robbery accomplice–identified a partially disguised Owens from a surveillance photo. Jones, Damon Johnson, Lionel Sorrells, and Adika Johnson, all testified that Owens admitted to them that he had robbed the bank, that a red dye pack had exploded on the money, and that someone had fired a gun. Bank employees corroborated these details.

Owens argues that too much of the evidence of his guilt comes from his co-conspirators. He cites to *Opper v. United States*, 348 U.S. 84 (1954), and its progeny for the proposition that extrajudicial, post-offense statements require corroboration. Yet these cases  involve admissions by the defendant to the

police, not to accomplices. Even the "uncorroborated testimony of an accomplice" may support a conviction. *Spearman*, 186 F.3d at 746. In this case, the corroborated testimony of four accomplices supports that of Owens. We therefore find the evidence sufficient.

## D. Restitution

The trial court ordered restitution under the Victim and Witness Protection Act ("VWPA"), 18 U.S.C. § 3663, in the amount of $229,900 to the various banks Owens was convicted of robbing, despite acknowledging that he was all but indigent. A district judge may choose to order restitution under the VWPA but, as Owens points out, the record must contain "some indication that the sentencing court considered the defendant's financial condition in ordering restitution." *United States v. Purther*, 823 F.2d 965, 969 (6th Cir. 1997); 18 U.S.C. § 3663(B)(i) ("The court, in determining whether to order restitution *shall* consider . . . the financial resources of the defendant."). We review orders of restitution *de novo*. *See United States v. Guardino*, 972 F.2d 682, 686 (6th Cir. 1992).

Because Owens was convicted of various crimes of violence resulting in the loss of property or money to an identifiable victim, restitution was ultimately mandatory under the Mandatory Victims Restitution Act. 18 U.S.C. § 3663A. Thus, if the district judge named the wrong statute, his mistake was harmless. *Cf. United States v. Vanderberg*, 201 F.3d 805 (6th Cir. 2001) (upholding as harmless the court's restitution order under MVRA, even though defendant was not given timely opportunity to object). Nothing would change on remand.

Moreover, although a judge *should* name the applicable statute, *see United States v. Padgett*, 892 F.2d 445, 448 n.4 (6th Cir. 1989), we have previously upheld orders of restitution where the judge did not do so. *See, e.g., United States v. Bearden*, 274 F.3d 1031, 1041 n.3 (6th Cir. 2001) (upholding an order restitution under the MVRA even though the trial court did not mention the statute); *cf. Guardino*, 972 F.2d at 682 (inferring that the restitution was ordered under the VWPA); *Padgett*, 892 F.2d at 448 (same).

Finally, the MVRA is technically an amendment to the VPWA. *See U.S. v. Perry*, 360 F.3d 519, 524 (6th Cir. 2004) ("The [VPWA], as amended by the [MVRA], provides a framework enabling victims of certain crimes to receive compensation from the perpetrators."). Thus, the judge may reasonably consider the MVRA to be a part of the VPWA, in which case he made no error at all. Accordingly, we affirm the order of restitution.

## E. Sentencing

The trial court sentenced Owens to 1,411 months of imprisonment. Of the 1,411 months sentenced, 1,260 were mandated by statute. *See* 18 U.S.C. §§ 924(c)(1)(A)(i)-(C)(i). At issue, therefore, are the 151 months within the trial court's discretion. We review legal conclusions regarding sentencing calculations *de novo*. *United States v. Hazelwood*, 398 F.3d 792, 795 (6th Cir. 2005).

At trial, Owens objected to an enhancement of his sentence for obstruction on the ground that the Government had not proved the underlying charge of perjury. Owens renews this objection on appeal. To impose an enhancement for obstruction through perjury a district court must articulate two things. "First, the court must identify the particular portions of the defendant's testimony it considers to be perjurious." *United States v. Chance*, 306 F.3d 356, 390 (6th Cir. 2002) (citing *United States v. Mise*, 240 F.3d 527, 531 (6th Cir. 2001)). In this case, the trial court identified several instances of perjury by the defendant such as his claim of duress and his denial of participation. "Second, the court must make . . . a finding that encompasses all factual predicates for a finding of perjury." *Id.* The trial court did this as well: "[T]he Court finds that the government has accurately articulated those portions of the transcript where Mr. Owens was asked about his involvement in the four robberies . . ., that is more than an adequate recitation of the portions of the transcript where Mr. Owens committed perjury, and the Court so finds."

Were this the end of the matter, we would affirm the enhancement.  Yet Owens has also challenged the constitutionality of his sentence, citing *United States v. Booker*, 125 S. Ct. 738 (2005).  Under this recent Supreme Court precedent, the United States Sentencing Guidelines are no longer mandatory, but advisory.  The district court therefore erred in sentencing Owens under a mandatory scheme.  Accordingly, and as both parties agree, the case should be remanded to the district court for resentencing.

## III.

Finding no error at trial, we **AFFIRM** the conviction in all respects, **AFFIRM** the order of restitution, but **REMAND** for resentencing in light of *Booker*.