**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Joseph OBIUKWU (92–2051) and Thomas
Glenn (92–2120), Defendants–
Appellants.**

**Nos. 92–2051, 92–2120.**

United States Court of Appeals,
Sixth Circuit.

Argued Jan. 19, 1994.

Decided Feb. 3, 1994.*

Kathleen Moro Nesi, Asst. U.S. Atty., Office of the U.S. Atty., J. Michael Buckley, Office of the U.S. Atty., Detroit, MI, for U.S.

Curtis L. Blood (argued and briefed), Collinsville, IL, for Joseph Obiukwu.

Joseph Obiukwu, pro se.

Mark E. Weaver (argued), Birmingham, MI, for Thomas Glenn.

Before: KENNEDY and NELSON, Circuit Judges; and CONTIE, Senior Circuit Judge.

PER CURIAM.

Convicted of conspiring to distribute heroin and sentenced to terms of imprisonment

---

* This decision was originally issued as an "unpublished decision" filed on February 3, 1994. On February 25, 1994, the court designated the opinion as one recommended for full-text publication.

exceeding 12 years in length, the defendants have appealed both their convictions and their sentences. We shall affirm the convictions. Because the district court failed to make appropriate factual findings on the amount of illegal drugs for which each defendant was responsible, we shall vacate the sentences and remand the case for further factfinding and resentencing.

I

In March of 1991 the Drug Enforcement Administration began an investigation of suspected illegal narcotics-dealing activity by a resident of Detroit, Michigan, named Abiodun Adeshina. On April 5, 1991, an undercover DEA agent, Durell Hope, agreed to purchase half an ounce of heroin from Mr. Adeshina. When they met that evening to consummate the transaction, Adeshina had Hope drive him to defendant Thomas Glenn's house. When the two men arrived there, however, Mr. Glenn, whom Adeshina identified as a supplier, was not at home. At Adeshina's direction, Agent Hope then drove to the house of Glenn's sister. Mr. Glenn was not there either, and no heroin changed hands that night.

Five days later Agent Hope returned to Mr. Adeshina's residence in another attempt to buy heroin. When he arrived at the house, Thomas Glenn and a woman named Christine Black were on the premises with Mr. Adeshina. Glenn produced a plastic bag containing an ounce of heroin, which he showed to Agent Hope. No one had a scale with which to weigh the half-ounce of heroin that Hope had agreed to purchase, and Glenn refused to give Hope the entire ounce and take payment for it later.

The three men then drove to a nearby liquor store, where Agent Hope gave Adeshina $3,750 for the half-ounce of heroin. After leaving the scene for a few minutes, Glenn returned and gave Adeshina the correct amount of the drug; Adeshina passed the drug to Agent Hope.

On April 17, 1991, Agent Hope returned to Adeshina's residence to negotiate another heroin purchase. This time defendant Joseph Obiukwu was at the house when Hope arrived. Adeshina told Hope that Obiukwu supplied heroin of high quality, and he explained to the agent that he had multiple sources, including Obiukwu and Glenn. Hope and Adeshina agreed on the sale of one ounce of heroin for $7,500, and, after consulting with Obiukwu, Adeshina told Agent Hope that the heroin would be available the following day.

Agent Hope returned to Adeshina's residence on April 18 to buy the ounce of heroin. Obiukwu was not present when Hope arrived, but Adeshina and Ms. Black told Hope that he would be there soon. While they waited for Obiukwu, Hope and Adeshina discussed a projected purchase of 500 grams of heroin, which Adeshina said he could obtain from a source in New Jersey. Obiukwu failed to arrive, and Hope told Adeshina that he wanted to leave. Adeshina then tried to telephone Obiukwu and left a message on his answering machine. Attempting to persuade Hope not to leave, Adeshina told Hope that Obiukwu had more than a kilogram of heroin available for sale.

Agent Hope met Adeshina in a parking lot on April 24 and purchased 26.6 grams of heroin obtained from Mr. Obiukwu. Adeshina, accompanied by an unknown man, sold Hope an additional 25.3 grams of heroin on May 15.

On May 31 agents of the DEA executed a search warrant on a van driven by Mr. Obiukwu. The search uncovered what appeared to be a drug ledger, containing names, dollar and gram amounts, and an entry reading "$36,000" next to what appeared to be Mr. Adeshina's name. Mr. Adeshina testified at trial that on the day of the search he had owed Obiukwu $36,000 for heroin purchased on credit.

On June 14 Adeshina agreed to sell Agent Hope four ounces of heroin for $25,000. Hope testified at trial that Mr. Adeshina appeared nervous during this meeting and that he mentioned Mr. Obiukwu's recent arrest.

Working independently, police officers in Oak Park, Michigan, arrested Thomas Glenn on July 2, 1991. At the time of his arrest Mr. Glenn was carrying 9.25 grams of a

heroin mixture, an address book, and $679 in cash. The address book contained Mr. Adeshina's nickname and his home telephone and pager numbers. A briefcase in Mr. Glenn's possession contained $49,960 in cash, $16,000 in cashier's checks, receipts for $99,000 in cashier's checks, and 46 grams of a cocaine-heroin mixture. Found under the mattress in the motel room where Glenn was arrested were a loaded handgun, $22,000 in cash, and a quantity of cocaine.

Mr. Glenn went to trial in a state court on charges of possessing cocaine with intent to deliver it. In a preliminary examination during the state proceedings, a magistrate held the evidence found under the mattress to be inadmissible as the product of an illegal search. A jury subsequently found Mr. Glenn guilty anyway, and the Michigan court sentenced him to prison for a term of thirteen to twenty years.

A federal grand jury indicted Messrs. Obiukwu and Glenn, along with Mr. Adeshina and Ms. Black, on October 22, 1991. Obiukwu and Glenn were both charged with conspiring to distribute heroin and with conspiring to possess heroin with intent to distribute it; in addition, Glenn was charged with aiding and abetting the distribution of heroin.

Adeshina and Black entered into plea agreements under which they pleaded guilty to conspiring to distribute heroin. Obiukwu and Glenn were tried together before a jury, and they were convicted on April 30, 1992. Mr. Obiukwu was sentenced to 151 months' imprisonment, and Mr. Glenn was sentenced to 155 months' imprisonment, the federal sentence to run concurrently with the state sentence. Obiukwu and Glenn both filed timely notices of appeal.

## II

### A

Prior to his federal trial, Mr. Glenn filed a motion styled "Motion in Limine to Exclude Anticipated Testimony and Evidence." This motion was filed on January 30, 1992, twenty days after the motion cut-off date set by the trial court. The motion sought to exclude the contents of the briefcase Glenn was carrying at the time of his July 2 arrest and about nine grams of a cocaine-heroin mixture found in a plastic bag in Mr. Glenn's pants pocket. The motion argued that these items should be excluded under Rule 403, Fed. R.Evid., because the effect of admitting them would be substantially more prejudicial than probative. The government responded by arguing that the items were relevant and that their probative value would predominate over any prejudicial impact they might have if introduced at trial.

In its response to Mr. Glenn's motion, the government also

> "put[ ] Defendant Glenn on notice of the Government's intention to seek admission into evidence [of] the Tech–9 semiautomatic pistol (loaded), $22,000 in U.S. currency, and $16,000 in cashier's checks found between Glenn's mattress and box spring in his motel room. Although said items were seized without benefit of a search warrant, said items would have been inevitably discovered. *Nix v. Williams*, 467 U.S. 431 [104 S.Ct. 2501, 81 L.Ed.2d 377] (1984)."

Prior to the date on which the government filed its response, Mr. Glenn had made no request under Rule 16, Fed.R.Crim.P., for production of tangible objects that the government intended to use at trial.

Mr. Glenn's response to the government's notice of its intent to use the items found under the mattress was contained in his "Brief in Response to Government's Answer to Defendant's Motion in Limine to Exclude Evidence." Glenn argued there that "it would be a great injustice to allow the Government to introduce collateral evidence previously suppressed in [the state prosecution], in which said evidence was not collateral." He claimed that the state magistrate "could not find an exception to the Fourth Amendment exclusionary rule that would allow for the introduction of [these] items," and attempted to distinguish the circumstances of the arrest at the motel from those in the *Nix* case.

At oral argument on the motion, the parties discussed the admissibility both of the items listed in Glenn's original motion and of the items found under the mattress. Al-

though oral argument focused on the grounds for exclusion advanced in Mr. Glenn's original motion—relevancy and undue prejudice—Glenn's counsel also discussed *Nix v. Williams* in an apparent attempt to argue that the inevitable discovery exception to the exclusionary rule did not apply. Seeking clarification of the basis of Glenn's objection, the court asked his attorney:

> "THE COURT: Are you basing your objection on 403, more prejudicial than probative? Is that the basis of your objection?
>
> "MR. WEAVER: The gun, I am basing it on the facts. I don't see how it comes in. They didn't have a search warrant. I am basing it also on 401 and 403. The money, I am basing it on the [preliminary] exam[ination] testimony [at the state trial] of [another witness] where she says, 'It's mine.'"

At the close of the hearing, the court denied Mr. Glenn's motion to exclude the evidence. It stated that the issue presented in the motion "boils down to a 403 question." Since, in the court's view, "there [wa]s no question that all this evidence is relevant," and since its potential prejudicial impact did not substantially outweigh its probative worth, the court denied the motion in limine. Mr. Glenn did not request a ruling at that point on whether the gun should be excluded as the product of an illegal search. He argues now that it was error not to exclude the gun.

The government counters that because he failed to file a suppression motion before the motion cut-off date set by the district court, Mr. Glenn has waived the opportunity to argue that the gun should have been suppressed. We agree.

Rule 12(b)(3) of the Federal Rules of Criminal Procedure provides that suppression motions must be filed prior to trial. Rule 12(c) allows a district court to set a date before which pre-trial motions must be filed. Rule 12(f) provides that failure to make a pre-trial motion before the motion cut-off date set by the court "shall constitute waiver" of the motion, unless the court, "for cause shown ... grant[s] relief from the waiver."

Here, the motion deadline was January 10. No extension of the date was sought, and Glenn's motion to exclude the items found under the mattress was not presented until February 12 (the date on which he filed his "Brief in Response to Government's Answer to Defendant's Motion In Limine to Exclude Evidence"), thirty-three days late.

The exclusionary rule argument contained in the defendant's response to the government's answer was, in effect, a motion to suppress. The fact that Mr. Glenn did not know of the government's intention to use the gun at trial until February 7, when the government filed its response to his original motion to exclude, did not relieve Glenn of the obligation of filing suppression motions before the cut-off date—for Mr. Glenn had not availed himself of his opportunity to request the production of tangible objects which the government planned to use as evidence. See Rule 16, Fed.R.Crim.P. Where a defendant fails to seek discovery under Rule 16, he will not be heard to complain that a subsequent suppression motion was late because he was unaware of the government's intent to use a particular object as evidence. *United States v. Gomez–Benabe,* 985 F.2d 607, 611 (1st Cir.1993).

The fact that the district court saw fit to rule on the merits of Mr. Glenn's motion, despite its untimeliness, does not save the defendant from waiver of the grounds stated in the motion. "The issues raised in an untimely Rule 12(b) motion are waived, even though the district court rules on the merits of the motion despite its untimeliness." *United States v. Oldfield,* 859 F.2d 392, 396 (6th Cir.1988). See also *United States v. Sachs,* 801 F.2d 839, 847 (6th Cir.1986) ("[T]he merits of [an untimely Rule 12(b)] motion are not preserved for appeal even if the district court chose to hear the motion; the district court's review of the motion 'does not alter the fact that the motion to suppress was made in violation of Fed.R.Crim.P. 12(b)(3), nor does it alter the fact that defendant waived the objection under Criminal Rule 12(f)'").

### B

Mr. Glenn argues that the trial court committed reversible error in allowing the

admission of Agent Hope's in-court identification of Glenn. He claims that Agent Hope's identification of him was irremediably tainted by an improper photographic show-up in which Hope identified Glenn at the Oak Park police station in the aftermath of Glenn's arrest at the motel.

Mr. Glenn never moved, either before or during the trial, for suppression of Agent Hope's identification testimony. Rule 12(b)(3), Fed.R.Crim.P., provides that motions to suppress evidence *must* be raised prior to trial. Rule 12(f) states that a party's failure to make motions which must be made prior to trial "shall constitute waiver" of the objection that should have been raised in such a motion. "This court strictly applies Rule 12(b), and has repeatedly held that failure to raise 12(b) motions in a timely fashion precludes appellate review." *United States v. Oldfield*, 859 F.2d 392, 396 (6th Cir.1988). "[U]nder Rule 12(f), we hold that we are categorically without jurisdiction to hear appeals of suppression issues raised for the first time on appeal." *United States v. Crismon*, 905 F.2d 966, 969 (6th Cir.1990) (per curiam). Where, as here, a defendant neither filed a pre-trial suppression motion nor objected to the introduction of the evidence at trial, we cannot review an assignment of error charging that the evidence should have been suppressed. See *United States v. Gomez–Benabe*, 985 F.2d 607, 610–11 (1st Cir.1993) (applying Rule 12(f) waiver where defendant failed to move to suppress in-court identification allegedly tainted by improper photographic show-up).[1]

## C

■ Mr. Glenn's third claim of error is that the district court improperly limited his cross-examination of Agent Hope.

Early in the trial, Officer Ralph Unger of the Detroit Police Department testified that he had participated in the execution of a search warrant at Mr. Adeshina's residence on March 5, 1991. The search uncovered several plastic bags containing heroin, as well as two scales. Officer Unger testified that none of the items seized during the search was submitted for fingerprint analysis. On cross-examination, Mr. Glenn's lawyer tried to question Officer Unger, who admittedly was not a fingerprint expert, on the means by which fingerprints are used to identify criminal suspects. The government objected, and the objection was sustained. Mr. Glenn asked Officer Unger how many times in his 22 years of police work (during which, Unger testified, he had participated in the execution of some 3,500 search warrants) items seized during searches were submitted for fingerprint analysis. The government objected on relevancy grounds, and this objection too was sustained. The court explained that Mr. Glenn was permitted to point out to the jury that the items were not submitted for analysis, but that the number of previous occasions on which Officer Unger had submitted evidence for fingerprint analysis was irrelevant.

Later in the trial Agent Hope testified on direct examination that he did not submit for fingerprint analysis the plastic wrapper that contained the heroin sold to him by Messrs. Adeshina and Glenn on April 10, 1991. Hope explained that he had field-tested the contents of the package to determine if they were actually heroin, and that in the process of performing the testing it was necessary for him to handle the package extensively. Hope testified that he bought heroin from Mr. Adeshina again on April 24, and that he submitted the plastic bag containing the heroin for fingerprint analysis, but no identifiable prints were found. Hope also testified that he bought heroin from Mr. Adeshina on May 13, but that analysis of the bag contain-

---

1. If we could reach the merits of the issue, we would resolve it in favor of the government. As the government argues, Agent Hope, a trained law enforcement agent, had "ample opportunity and time to observe Glenn during the April 10, 1991 heroin deal." On that occasion, Hope met Messrs. Glenn and Adeshina in a room at the rear of Adeshina's house. Hope testified that he stood close enough to Mr. Glenn to touch him, and that Glenn showed him a plastic bag of heroin that Glenn was carrying in his jacket. Adeshina also testified that Mr. Glenn was the third individual involved in the April 10 heroin deal. We do not believe that Agent Hope's viewing of Glenn's photograph, in an attempt to learn Glenn's true name, created a substantial likelihood of misidentification of Glenn. *United States v. Monsour*, 893 F.2d 126, 128 (6th Cir.1990).

ing the heroin he bought that day did not reveal any usable fingerprints.

On cross-examination Mr. Glenn attempted to question Agent Hope on methods of fingerprint analysis, despite Hope's admission that he was not a fingerprint expert and that the "only thing" he did was "to submit these prints to be analyzed by professionals." The government objected to the line of questioning, claiming that it was irrelevant, and the court sustained the objection.

Mr. Glenn now contends that the court abused its discretion by sustaining the government's objection to the questioning of Agent Hope,[2] with the result that Glenn was unable "to properly present a key defense issue." Mr. Glenn states that the absence of fingerprints on the plastic bags was "critical to his defense," and that the trial court's ruling therefore constituted reversible error.

In reviewing a district court's evidentiary rulings, as both parties recognize, we apply an abuse-of-discretion standard. *United States v. Mahar,* 801 F.2d 1477, 1495 (6th Cir.1986). Although the Sixth Amendment of the United States Constitution guarantees a defendant the right "to be confronted with the witnesses against him," it does not "prevent[ ] a trial judge from imposing any limits on defense counsel's" questioning of a prosecution witness. *Delaware v. Van Arsdall,* 475 U.S. 673, 678–79, 106 S.Ct. 1431, 1434–35, 89 L.Ed.2d 674 (1986). "On the contrary, trial judges retain wide latitude ... to impose reasonable limits on ... interrogation that is repetitive or only marginally relevant." *Id.* Federal Rule of Evidence 611(b) accords judges the discretion to impose such appropriate limits on the conduct of cross-examination.

We do not think that the trial court abused its discretion in limiting the cross-examination of Agent Hope. Mr. Glenn says that the lack of fingerprint evidence tying him to the plastic bags containing heroin was "critical to his defense," but he was able to argue to the jury that no such evidence had been introduced. Mr. Glenn was not entitled to conduct a seminar with Agent Hope on the science of fingerprint analysis, given the agent's lack of expertise on that subject, and the court properly exercised its discretion by preventing the time-consuming pursuit of such "marginally relevant" matters.

## III

■ Both Mr. Glenn and Mr. Obiukwu ask this court to vacate their sentences. They contend that the district court erred in holding them both accountable for more than one kilogram of heroin but less than three kilograms, the breakpoints for a base offense level of 32 under the sentencing guidelines.

A defendant convicted of participating in a narcotics conspiracy is sentenced under a guideline range determined, in part, by the amount of narcotics for which he is responsible. This amount is calculated under U.S.S.G. § 1B1.3, which defines "relevant conduct." At the time of the defendant's sentencing in this case, § 1B1.3(a)(1) provided in part that a defendant was responsible for "all acts and omissions committed or aided and abetted by the defendant, or for which the defendant would be otherwise accountable, that occurred during the commission of the offense...." Conduct for which a defendant "would be otherwise accountable" was defined as including "conduct of others in furtherance of the execution of the jointly-undertaken criminal activity that was reasonably foreseeable by the defendant." U.S.S.G. § 1B1.3, comment (n. 1) (1991).

The defendants' sentences were based on the district court's understanding that at least 1,300 (and perhaps as much as 1,800) grams of heroin were involved in the conspiracy. The court apparently acted under the assumption that both defendants had to be held accountable for the total quantity of drugs that could be proved, by a preponderance of the evidence, to have been the object of the conspiracy. Under U.S.S.G. § 1B1.3, however, a conspirator is not automatically charged with responsibility for all the narcotics funnelled through the conspiracy; quantities handled by other conspirators are attributed to a defendant only if the conduct of the other conspirators was "reasonably foreseeable" to the defendant and was within the

---

2. Mr. Glenn does not argue that limitation of the    cross-examination of Officer Unger was error.

scope of the criminal activity the defendant agreed jointly to undertake. *United States v. Jenkins,* 4 F.3d 1338, 1345–47 (6th Cir. 1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1547, 128 L.Ed.2d 197 (1994). Because the district court did not address the question of foreseeability, we must vacate the sentences and remand the case for resentencing.

The convictions of Messrs. Obiukwu and Glenn are **AFFIRMED.** Their sentences are **VACATED,** and the cases are **REMANDED** to the district court for further proceedings not inconsistent with this opinion.