**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 07a0369n.06
Filed: May 31, 2007

**No. 05-2125**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**UNITED STATES OF AMERICA,**

    **Plaintiff-Appellee,**

**v.**

**LARRY GENE VINING,**

    **Defendant-Appellant.**

                           /

**ON APPEAL FROM THE UNITED
STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF MICHIGAN**

**BEFORE:    SUHRHEINRICH, CLAY and SUTTON, Circuit Judges.**

    **CLAY, Circuit Judge.**  Defendant Larry Vining was convicted for being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1), on May 6, 2005.  Defendant was sentenced on August 9, 2005, to a term of imprisonment of eighty-four months.  Defendant challenges his conviction arguing that the district court 1) failed to conduct a hearing under *Remmer v. United States*, 347 U.S. 227, 230 (1954); 2) violated his right to confront a government witness; 3) limited evidence of third-party guilt; 4) limited argument on Defendant's theory of defense; and 5) denied his right to a fair trial.  For the reasons that follow, we **AFFIRM** Defendant's conviction.

## BACKGROUND

On June 19, 2004, at approximately 4:00 a.m. in Pontiac, Michigan, a police officer "observed a burgundy Buick four-door traveling at a high rate of speed." (J.A. 134) The police officer "turned on [the] overhead lights to initiate a traffic stop on the vehicle," and "turned on the side spotlight of [the] vehicle and [ ] used it to illuminate the interior of the Buick." (J.A. 135) The police officer "observed the driver of the vehicle making motions, reaching down and towards the center of the vehicle." (J.A. 136) "As soon as the Buick came to a complete stop, the driver of the Buick got out and ran westbound into the neighborhoods," while Nakitae Kuhn ("Kuhn"), a passenger, "remained in the passenger seat." *Id.* The police officer "got out of [his] vehicle and ran after the driver," for "a minute and a half to two minutes," but was unable to catch the driver. (J.A. 137) Kuhn "was not able to give [ ] [the driver's] name," but she "put [police officers] in contact with someone that she had been hanging out with that night who gave [police officers] [the driver's] name." (J.A. 142-43) Other police officers arrived at the scene "with a Canine Unit to attempt to do a track," but the canine track "was not successful." (J.A. 138) Police officers "[f]ound a handgun underneath the driver's seat of the vehicle." (J.A. 139) The firearm was a "[h]i-point, [m]odel C9, 9mm semi-automatic pistol with an obliterated serial number, which was manufactured outside the State of Michigan and thus traveled in interstate commerce." (J.A. 8) Police officers "returned to the police station and based on the information [ ] obtained about the driver, [ ] w[ere] able to obtain a photograph of the driver." (J.A. 140) Defendant in this case was identified as the driver and person who fled during the traffic stop.

2

On August 4, 2004, a police officer observed Defendant driving "an older model Buick Park Avenue traveling in Pontiac, Michigan "at a quick[ ] pace." (J.A. 147) The police officer "ran the plate" and "there was felon warrants for carrying a concealed weapon." *Id.* The police officer "turned on [the] overhead lights, notified [ ] dispatch [he] was stopping the vehicle." *Id.* When the police officer approached the vehicle, Defendant "was stepping out of his driver's door." (J.A. 148) Defendant was "asked [ ] to step back into his vehicle." *Id.* "At that point [Defendant] ran into the [Pontiac Osteopathic] hospital through the ER entrance." *Id.* Defendant ran through the "[e]mergency [r]oom area of the hospital, then through several different floors of the hospital." (J.A. 149) The police officer ultimately found Defendant in the basement, and "told him to get down onto the ground, at which time [Defendant] told [the police officer] no . . . . [the driver] stated that he was not going to. He said just arrest him. At that point [the police officer] pepper sprayed," and arrested Defendant. (J.A. 150)

On September 17, 2004, Kuhn testified in a "preliminary examination" in the 50th Judicial District Court ("state court") in Pontiac, Michigan. (J.A. 22) (capitalization omitted). Kuhn affirmed that when the Buick "w[as] stopped, [she] grabbed [Defendant] by the arm, he reached and grabbed a gun, put it on the floor and ran." (J.A. 29) According to Kuhn, Defendant "opened the door and just took off . . . . he did not say one word." (J.A. 31) Kuhn did not know Defendant's name, but "knew [Defendant] as L.P." *Id.* Kuhn indicated that she could identify Defendant because she "had been with him the whole night," (J.A. 33), and at the time of the traffic stop "he was talking about going to some motel room," (J.A. 32). Kuhn also testified about being threatened by

Defendant. The transcript indicates that Kuhn was subject to cross-examination, but Defendant's counsel did not cross-examine Kuhn.

On January 13, 2005, a federal grand jury indicted Defendant charging him with being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). Defendant's case proceeded to a jury trial. The government informed the district court that Kuhn could not be located or otherwise served with a subpoena to testify in connection with Defendant's case. Since Kuhn "[wa]s unavailable for trial," (J.A. 46), the government argued that her testimony in the state court "proceeding under oath subject to cross-examination," (J.A. 153), should be admitted as "permissible hearsay" under Fed. R. Evid. 804(b)(1), (J.A. 46). Defendant's counsel objected arguing that

> [Defendant] was represented by a different attorney at that time. The attorney came to court five minutes before the hearing. He did no investigation into the matter. He didn't -- he hardly even spoke to [Defendant] about the case. His cross-examination of this was deficient to the extent it would be construed as ineffective assistance. So for that reason, Your Honor, I make my objection and I've preserved the record with that objection.

(J.A. 46) The district court asked a government official to testify under oath about "the efforts that were made to locate [Kuhn]." *Id.* The witness affirmed that he had visited "the address that [Kuhn] has listed on her driver's license, the address that she gave the police department during this incident," approximately "12 to 13 times." (J.A. 47) "None of those times was she either there or if she was there, was she willing to answer the door." *Id.* The officer indicated that the police department "did an intelligence check on her" which confirmed the same address, but "were unable to determine any employment." (J.A. 48) "The background check also found somebody who may have possibly been a relative . . . with a phone number," but "[t]he phone number has since been

disconnected." *Id.* Based on this testimony, the district court found that "[Kuhn] is unavailable under 804(a)(5) and that her testimony is admissible, her former testimony is admissible under 804(b)(1)." (J.A. 49)

At trial, the transcript of Kuhn's prior hearing testimony was read into the record, but the court determined that certain portions concerning alleged threats to Kuhn by Defendant were not admissible as evidence. The court reporter did not transcribe Kuhn's testimony, and did not record the district court's rulings with respect to the admissibility of different portions of Kuhn's testimony. *See* J.A. 153-54 (noting only that "[t]ranscript of [ ] Kuhn began at 9:52 a.m., and ended at about 10:03 a.m."). In addition to introducing Kuhn's state court testimony as evidence, two police officers testified about Defendant's June 19, 2004, and August 4, 2004, encounters with the police, and an "expert in latent [finger]print recovery" proffered testimony concerning unsuccessful efforts to recover fingerprints from the firearm. (J.A. 155)

After the government presented its evidence, Defendant moved for directed verdict under Fed. R. Crim. P. 29, arguing that "the evidence that's been shown so far of -- is sufficient to give rise to a reasonable suspicion, but that's as far as it goes." (J.A. 161) Defendant also argued that Kuhn's testimony was not credible. The government responded that "[t]here's been a [s]tipulation with respect to [Defendant's] prior criminal history, [s]tipulation with respect to the firearm and it traveling interstate commerce. The only issue is possession and there's been sufficient evidence on that issue." (J.A. 161-62) The district court found that "[t]here's sufficient evidence in the record to go to the jury" and denied Defendant's motion. (J.A. 162)

After the denial of the motion for directed verdict, Defendant testified. In his testimony, Defendant affirmed that he was on parole "[f]or drugs and a handgun." (J.A. 174) He averred that the firearm found in his vehicle was not his weapon, and that Kuhn's hand "came out [of] her bag with a gun." (J.A. 171) According to Defendant, the gun belonged to Kuhn. Defendant said that he did not "want to have nothing to do with that gun," and that he is "not supposed to be around [firearms]." *Id.* He indicated that he "jumped out and ran," because he was scared. *Id.*

During closing arguments, the government maintained that Kuhn was credible because she cooperated with the police at the scene of the crime. More specifically, the government argued that Kuhn "waited for the officer to come back and she told [the] [o]fficer [ ] what she knew . . . . [s]he didn't try to get rid of the weapon. She didn't try to run. She didn't do anything but stay put. She did the right thing." (J.A. 204) In turn, Defendant attempted to impeach Kuhn's credibility. On numerous occasions, the government objected to Defendant's closing argument because his statements called for speculation and assumed facts not in evidence. The district court sustained most of the government's objections.

On May 6, 2005, the jury found Defendant guilty of the firearm possession charge. After the trial, since the record was unclear, the district court held a hearing to determine which portions of Kuhn's state court testimony were admitted as evidence. The district court concluded that it "excluded the general discussion of [Kuhn's] fear or unhappiness about being [in the state court proceeding], but let in the testimony about bringing the bond money." (J.A. 250) Defendant was sentenced on August 9, 2005, to an imprisonment term of eighty-four months. The district court

"recommend[ed] a facility with the Comprehensive Drug Treatment Program." (J.A. 11) (emphasis omitted).  Defendant filed a timely notice of appeal on August 17, 2005.

## DISCUSSION

### I.      THE JURY'S REVIEW OF THE STATE COURT TRANSCRIPT

#### *Standard of Review*

This Court reviews for abuse of discretion the district court's failure to conduct a hearing under *Remmer v. United States*, 347 U.S. 227, 230 (1954).  *See, e.g.*, *United States v. Owens*, 426 F.3d 800, 805 (6th Cir. 2005).  However, in this case, Defendant failed to raise an objection.  This Court reviews a forfeited claim for plain error.  *See, e.g.*, *United States v. Olano*, 507 U.S. 725, 733 (1993); *United States v. Perry*, 438 F.3d 642, 651 (6th Cir. 2006). "When reviewing for plain error, this court must decide whether (1) there was an error in the district court, (2) the error was plain, (3) the plain error affected the defendant's substantial rights, and (4) the plain error seriously affected the fairness, integrity or public reputation of judicial proceedings." *United States v. Fraser*, 448 F.3d 833, 841 (6th Cir. 2006).

#### *Analysis*

#### A.      Legal Framework

"The Sixth Amendment right to trial by jury 'ensure[s] criminal defendants a fair trial by a panel of impartial, indifferent jurors.'"  *Perry*, 438 F.3d at 651 (quoting *United States v. Davis,* 177 F.3d 552, 556-57 (6th Cir. 1999) (alteration in original)).  "To guard this right," the Supreme Court held in *Remmer* that "when possible juror misconduct is brought to the trial judge's attention he has a duty to investigate and to determine whether there may have been a violation of the constitutional

guarantee." *Perry*, 438 F.3d at 651 (quoting *Davis,* 177 F.3d at 556). The district court is in the best position to determine whether a *Remmer* hearing was necessary. *See, e.g.*, *United States v. Lopez,* 271 F.3d 472, 489-90 (3d Cir. 2001). "When a district judge refuses to conduct a *Remmer* hearing under such circumstances, [this Court] routinely remand[s]." *Owens*, 426 F.3d at 805 (citations omitted). However, for the district court to conduct a *Remmer* hearing, "a defendant must do more than simply raise the possibility of bias." *Id.* (citing *United States v. Herndon,* 156 F.3d 629, 635 (6th Cir. 1998)). Defendant must "raise[ ] a 'colorable claim of extraneous influence.'" *Owens*, 426 F.3d at 805 (quoting *Davis,* 177 F.3d at 557). An "extraneous influence" is "one derived from specific knowledge about or a relationship with either the parties or their witnesses." *Herndon,* 156 F.3d at 636. "[N]o presumption of prejudice arises from [ ] a[n] [unauthorized] contact" with the jury. *United States v. Cooper*, 868 F.2d 1505, 1523 (6th Cir. 1989) (citation omitted). "[D]efendant bears the burden of proving actual juror bias." *Id.* (citation omitted).

In this case, Defendant alleges that the jury was biased because they had inadvertent contact with allegedly prejudicial material, namely, the unredacted transcript of Kuhn's state court testimony. In pertinent part, the state court transcript reflects the following exchange between Kuhn and the state court judge:

> The Court:      . . . Ms. Kuhn, tell me how have you been contacted in relationship to this case.
>
> The Witness:  Okay, My sister, which is--my sister is pregnant by [Defendant's] cousin. My sister called me a couple days ago . . . . [s]he notified me about this case. She said that [Defendant] called his cousin and persistently said this case was over. He won it. Now, I didn't know nothing about . . . this case was already in progress or anything like that. She called me and told me about the case.

The Court:    Okay.  Well, just--keep on.  Tell me what happened.

The Witness:   So something about that I guess [Defendant] was mad because wouldn't nobody bring him no bond money.  I didn't show up in court like I was supposed to, so his girlfriend or whoever it is, I guess, when she sees me is going to have something to say.

The Court:    That was it?

The Witness:   And then, I guess, he was mad because wouldn't nobody come up here and help pay for his bail money and I didn't show up and that's basically it.

(J.A. 38-39)  Defendant argues that this exchange contains "irrelevant and highly prejudicial inferences that [Defendant] had been attempting to threaten [ ] Kuhn." (Def. Br. at 15)  The record indicates that the district court "excluded the general discussion of [Kuhn's] fear or unhappiness about being [in the state court proceeding], but let in the testimony about bringing the bond money." (J.A. 250)  Although the district court excluded the allegedly prejudicial portions of the transcript, the jury was given unredacted copies of the state court transcript.

In *Perry*, a case where a jury inadvertently came into contact with documents that were not introduced as evidence in the course of jury deliberations, a defendant "complain[ed] that the district court failed to conduct a *Remmer* hearing sua sponte to inquire into potential jury bias."  438 F.3d at 651.  This Court found:

> Perry waived his right to such a hearing when he specifically agreed to have the court instruct the jury. *See United States v. Olano,* 507 U.S. 725, 733 (1993) . . . . "An attorney cannot agree in open court with a judge's proposed course of conduct and then charge the court with error in following that course." *United States v. Sloman,* 909 F.2d 176, 182 (6th Cir. 1990).  Perry therefore waived any objection he might have had to the court's instruction to the jury regarding the method to deal with the unadmitted materials the jury inadvertently

discovered in Perry's bookbag.

*Perry*, 438 F.3d at 651. The instant case is analogous to *Perry*. As in *Perry*, Defendant in the instant case failed to move for a *Remmer* hearing and did not otherwise object when the unredacted transcripts were provided to the jury. Defendant has, therefore, waived any objection with respect to a *Remmer* hearing.

Even if we were to find that this case is distinguishable from *Perry*, the district court did not commit plain error because the district court expressly stated:

> Let me just caution the jurors. Transcripts are not exhibits. It's just to help you follow the testimony and you're not going to be able to take these transcripts with you into the jury room for deliberations, so if you need to make notes about what was said, feel free to do so. But I just don't want you to think that you're going to have those transcripts with you.

(J.A. 152) Although the unredacted transcripts were distributed to the jurors, the jurors were instructed not to consider the transcripts as evidence and were not allowed to retain the transcripts. This Court "presume[s] that juries follow their instructions." *Hill v. Mitchell*, 400 F.3d 308, 325-26 (6th Cir. 2005) (quoting *Washington v. Hofbauer*, 228 F.3d 689, 706 (6th Cir. 2000)); *see also Barnes v. Owens-Corning Fiberglas Corp.*, 201 F.3d 815, 822 (6th Cir. 2000) ("Federal courts generally presume the jury will follow the instructions correctly as given."). "[T]he presumption that a jury followed instructions can only be overcome where there is an 'overwhelming probability' that [the jury] was unable to do so." *Caldwell v. Bell*, 288 F.3d 838, 846 (6th Cir. 2002) (quoting *Hofbauer*, 228 F.3d at 706). In this case, "the instructions, when viewed as a whole," were not "confusing, misleading, [or] prejudicial." *Barnes*, 201 F.3d at 822. Indeed, there is no indication that the jury relied on the unredacted transcripts in reaching its decision. Even if we were to find that

the jury improperly relied on the unredacted transcripts, the content of the material "do[es] not measure up to the degree of prejudice which [would] result[ ] in reversal." *United States v. Rubino*, 431 F.2d 284, 288 (6th Cir. 1970). The state court transcript at issue in this case was not so prejudicial as to require reversal or a new trial.

## II.     EVIDENCE PROPERLY EXCLUDED AS INADMISSIBLE HEARSAY

### *Standard of Review*

This Court review a district court's evidentiary rulings for an abuse of discretion. *United States v. Obiukwu*, 17 F.3d 816, 821 (6th Cir. 1994); *United States v. Mahar*, 801 F.2d 1477, 1495 (6th Cir. 1986). "An abuse of discretion exists when the district court applies the wrong legal standard, misapplies the correct legal standard, or relies on clearly erroneous findings of fact." *Geier v. Sundquist,* 372 F.3d 784, 789-90 (6th Cir. 2004) (quoting *First Tech. Safety Sys., Inc. v. Depinet*, 11 F.3d 641, 647 (6th Cir. 1993)).

### *Analysis*

The Sixth Amendment "guarantees a defendant the right to be confronted with the witnesses against him." *Obiukwu*, 17 F.3d at 821 (internal quotation marks and citation omitted); *see also Brumley v. Wingard*, 269 F.3d 629, 657-58 (6th Cir. 2001) (finding that "the Confrontation Clause itself do[es] not require a 'live' confrontation between accuser and accused in front of the jury and at the time of trial."). "Where testimonial evidence is at issue, [ ] the Sixth Amendment demands what the common law required: unavailability and a prior opportunity for cross-examination." *Crawford v. Washington*, 541 U.S. 36, 68 (2004).

In this case, Kuhn's testimony is not barred by the Sixth Amendment because the government made a showing that Kuhn was unavailable and that Defendant had a prior opportunity to cross-examine Kuhn in the state court proceeding. A government official testified under oath in the district court about "the efforts that were made to locate [Kuhn]." (J.A. 46) The witness affirmed that he had visited "the address that [Kuhn] has listed on her driver's license, the address that she gave the police department during this incident," approximately "12 to 13 times," but was unable to find Kuhn. (J.A. 47) The police department was "unable to determine [ ] [Kuhn's] employment," and the only listed "phone number has since been disconnected." (J.A. 48) This testimony supports a finding that Kuhn was unavailable at the time of Defendant's trial.

The record indicates that Kuhn testified in a state court proceeding. The transcript of the state court proceeding clearly indicates that Kuhn's testimony was under oath and subject to cross-examination. Defendant and his attorney were present during the state court preliminary examination where Kuhn testified and were invited to cross-examine Kuhn by the court. Although Defendant's counsel had an opportunity to cross-examine Kuhn concerning Defendant's alleged threats, counsel did not cross-examine Kuhn.[1]

---

[1] With respect to counsel's failure to cross-examine Kuhn, Defendant indicates that his attorney at the time

> came to court five minutes before the hearing. He did no investigation into the matter. He didn't -- he hardly even spoke to [Defendant] about the case. His cross-examination of this was deficient to the extent it would be construed as ineffective assistance.

(J.A. 46) To the extent that the failure to cross-examine may suggest ineffective assistance of counsel, the Court cannot make a determination with respect to this issue because Defendant does not raise an ineffective assistance of counsel claim in this case.

In light of these facts, we find that the district court properly concluded that Kuhn's testimony is not barred by the Sixth Amendment because the government made an adequate showing that Kuhn was unavailable and that Defendant had a prior opportunity to cross-examine Kuhn in the state court proceeding. The district court properly found that "[Kuhn] is unavailable under [Fed. R. Evid.] 804(a)(5) and that her testimony is admissible, her former testimony is admissible under [Fed. R. Evid.] 804(b)(1)." (J.A. 49)

Defendant argues that "[t]he district court erred in not allowing [him] to testify about prior statements of [ ] Kuhn regarding threats to her boyfriend in order to show her motive or bias to fabricate the story that the gun belonged to [Defendant]." (Def. Br. at 17) Defendant concedes that his testimony would have been hearsay, but argues that "limit[s] [to] cross-examination only come[ ] into play after the defendant has been afforded his Sixth Amendment Confrontation right," and that an exception to hearsay should apply in this case because Kuhn was unavailable during the trial. *Id.* at 18. Since Defendant was afforded his Sixth Amendment confrontation rights in the state court proceedings, as explained above, the district court properly excluded this evidence as inadmissible hearsay. "Federal Rule of Evidence 611(b) accords judges the discretion to impose such appropriate limits on the conduct of cross-examination," and the Sixth Amendment does not "'prevent[ ] a trial judge from imposing [ ] limits on defense counsel's' questioning of a prosecution witness." *Obiukwu*, 17 F.3d at 821 (quoting *Delaware v. Van Arsdall,* 475 U.S. 673, 678-79 (1986)).

## III. EVIDENCE OF THIRD-PARTY GUILT NOT LIMITED BY THE DISTRICT COURT

### *Analysis*

"[T]he Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense." *Holmes v. South Carolina*, 126 S. Ct. 1727, 1731 (2006) (internal quotation marks and citation omitted). "[S]tate and federal rulemakers have broad latitude under the Constitution to establish rules excluding evidence from criminal trials." *United States v. Scheffer,* 523 U.S. 303, 308 (1998). "While the Constitution [ ] prohibits the exclusion of defense evidence under rules that serve no legitimate purpose or that are disproportionate to the ends that they are asserted to promote, well-established rules of evidence permit trial judges to exclude evidence if its probative value is outweighed by certain other factors such as unfair prejudice, confusion of the issues, or potential to mislead the jury." *Holmes*, 126 S. Ct. at 1732. "[T]he Constitution permits judges to exclude evidence that is repetitive . . ., only marginally relevant or poses an undue risk of harassment." *Id.* (internal quotation marks and citations omitted) (alterations in original).

Defendant's third claim is closely related to the second issue in this case, which is discussed above. Defendant's brief is cursory and fails to meaningfully develop this claim. Defendant essentially argues that by limiting his testimony concerning the alleged threats, the district court did not allow him to present evidence of a third-party's guilt. Defendant's argument is meritless. Contrary to Defendant's assertions, the record clearly indicates that Defendant proffered testimony about a third-party's alleged guilt. Defendant testified that the firearm found in the Buick belonged to Kuhn, and that the firearm came from Kuhn's purse. Defendant affirmed that he did not "want to have nothing to do with that gun," and that he informed Kuhn that he was "not supposed to be

around [firearms]." (J.A. 171) He indicated that during his encounters with the police on June 19, 2004, and August 4, 2004, he "jumped out and ran," because he was scared. *Id.* Indeed, the record indicates that Defendant and his attorney frequently stressed that the firearm belonged to Kuhn. Defendant's counsel presented the theory of a third-party's guilt in the opening argument, through Defendant's direct examination, and in the closing statement. The record clearly indicates that Defendant had an opportunity to present testimony concerning Kuhn's alleged guilt. Therefore, contrary to Defendant's contention, the district court did not limit Defendant's ability to present evidence of a third-party's alleged guilt.

## IV. ARGUMENT ON DEFENDANT'S THEORY OF DEFENSE NOT LIMITED BY THE DISTRICT COURT

### *Analysis*

"[C]losing argument for the defense is a basic element of the adversary factfinding process in a criminal trial." *Herring v. New York*, 422 U.S. 853, 858 (1975). The Supreme Court has expressly found that:

> closing argument serves to sharpen and clarify the issues for resolution by the trier of fact in a criminal case. For it is only after all the evidence is in that counsel for the parties are in a position to present their respective versions of the case as a whole. Only then can they argue the inferences to be drawn from all the testimony, and point out the weaknesses of their adversaries' positions. And for the defense, closing argument is the last clear chance to persuade the trier of fact that there may be reasonable doubt of the defendant's guilt.

*Id.* at 862 (citation omitted). Defendant's counsel is permitted to argue all reasonable inferences from the evidence. *United States v. Miguel*, 338 F.3d 995, 1001-02 (9th Cir. 2003). However, the Supreme Court has recognized that

> [t]he presiding judge must be and is given great latitude in controlling the duration and limiting the scope of closing summations. He may limit counsel to a reasonable time and may terminate argument when continuation would be repetitive or redundant. He may ensure that argument does not stray unduly from the mark, or otherwise impede the fair and orderly conduct of the trial. In all these respects he must have broad discretion.

*Id.* at 862 (citation omitted).

Defendant argues that the district court erred in limiting his closing argument. In this case, the district court sustained a number of objections because certain statements in Defendant's closing argument were out of bounds. The record indicates that Defendant's counsel made statements at closing argument that called for speculation and assumed facts that were simply not in evidence, or otherwise supported by the record. For example, Defendant argued that Kuhn destroyed relevant evidence:

> The reason why he left the gun behind is because it wasn't his gun. He didn't have possession of it. He didn't have it to grab to run away with it; it was hers. She had the gun and while he was running down the street trying to get away from the police, she took and wiped it off.

(J.A. 208) The notion that Kuhn destroyed evidence is simply not supported by facts in the record or evidence presented at trial. Defendant's counsel again assumed facts not in evidence when he discussed Kuhn's unavailability for trial, specifically stating "[t]here are a lot of reasons why she wouldn't be here, none of them legitimate." (J.A. 213) Defendant's counsel improperly asserted that Kuhn's credibility must be discounted because, unlike Defendant, she did not testify before the jury. Defendant's counsel also indicated that "[w]hen you get arrested when you're on parole, you go into jail." (J.A. 210) Like the other speculative statements made in the closing argument, these

16

statements assumed facts that were not in the record and that were not admitted as evidence. At times, Defendant's counsel recognized that his statements were excessive and inappropriate. *See, e.g.*, J.A. 207 (counsel apologizes for improperly vouching for Defendant's truthfulness); *see also* J.A. 208 (counsel concedes that his argument was "speculation sure."). In light of the factual inaccuracies and misleading statements, the court instructed Defendant's counsel to "confine [his] argument to the facts as they've been established at trial." (J.A. 212) In the instant case, the district court did not abuse its discretion and did not undermine Defendant's right to present a defense.

## V.    NEW TRIAL NOT WARRANTED BASED ON ACCUMULATION OF ERRORS

### *Standard of Review*

This Court conducts a cumulative-error analysis to determine whether "numerous errors concerning matters of great importance . . . had to have [had] a substantial effect on the jury." *Campbell v. United States*, 364 F.3d 727, 736 (6th Cir. 2004); *see also United States v. Parker,* 997 F.2d 219, 221 (6th Cir. 1993).

### *Analysis*

This Court has found that "[e]rrors that might not be so prejudicial as to amount to a deprivation of due process when considered alone, may cumulatively produce a trial setting that is fundamentally unfair." *United States v. Hernandez*, 227 F.3d 686, 697 (6th Cir. 2000) (quoting *Walker v. Engle,* 703 F.2d 959, 963 (6th Cir. 1983)). "[T]rial-level errors that would be considered harmless when viewed in isolation of each other might, when considered cumulatively, require reversal of a conviction." *Campbell*, 364 F.3d at 736 (6th Cir. 2004) (citing *Parker,* 997 F.2d at 221). However, "the accumulation of non-errors cannot collectively amount to a violation of due

process." *Campbell*, 364 F.3d at 736 (citation omitted). "[C]umulative-error analysis should evaluate only the effect of matter determined to be in error, not the cumulative effect of non-errors." *McKinnon v. Ohio,* No. 94-4256, 1995 WL 570918, at *12 (6th Cir. Sept. 27, 1995) (unpublished case) (quoting *United States v. Rivera,* 900 F.2d 1462, 1471 (10th Cir. 1990)); *see also United States v. Lumpkin,* 192 F.3d 280, 290 (2d Cir. 1999) ("[T]he accumulation of non-errors does not warrant a new trial.").

In the instant case, the district court did not commit any error. Since the district court did not commit any error, and because the accumulation of non-errors does not warrant a new trial, Defendant's last claim is meritless.

## CONCLUSION

For the foregoing reasons, we **AFFIRM** the district court's conviction.