COLE, Circuit Judge, concurring.
Though the trial court could have been clearer, I agree with the majority’s conclusion that the Kentucky Supreme Court held that Appellant waived his right to appeal this issue by failing to insist that the trial court take any further action after counsel raised the specter of extraneous juror influence. See Scott v. Mitchell, 209 F.3d 854, 864-65 (6th Cir.2000). Appellant does not argue that his counsel rendered ineffective assistance by failing to request a Remmer hearing, admonishment, mistrial, new trial, or otherwise objecting to the impaneled jury. Rather, Appellant asserts that the trial court’s failure to address the issue was a structural error, and that no Kentucky procedural rule can relieve the trial court of its federal constitutional duty to investigate. Because we have held that appellants waived their right to appeal a trial court’s failure to hold a Remmer hearing by failing request a hearing, admonishment, mistrial, or new trial, I disagree. See United States v. Peiry, 438 F.3d 642, 651 (6th Cir.2006); United States v. Walker, 160 F.3d 1078, 1083-84 (6th *171 Cir.1998); see also United States v. Vining, 224 Fed.Appx. 487, 493-94 (6th Cir.2007); United States v. Reeves, No. 99-1248, 2000 WL 687649, at *2 (6th Cir. May 19, 2000). It is for this reason that I believe Appellant has procedurally defaulted this claim.
However, I write separately because I disagree with the majority’s conclusion that Appellant’s allegation of extraneous juror contact was so vague that it did not constitute a colorable claim requiring a Remmer hearing. In my view, had counsel preserved federal habeas review, Appellant raised a colorable claim of extraneous juror contact requiring a Remmer hearing.
A trial court confronted with an allegation of extraneous juror influence must conduct a Remmer hearing. United States v. Rigsby, 45 F.3d 120, 124-25 (6th Cir.1995). A defendant is not automatically entitled to such a hearing, and he or she must first “raise[] a ‘colorable claim of extraneous influence.’ ” United States v. Owens, 426 F.3d 800, 805 (6th Cir.2005) (quoting United States v. Davis, 177 F.3d 552, 557 (6th Cir.1999)). An “extraneous influence” is “one derived from specific knowledge about or a relationship with either the parties or their witnesses.” Vining, 224 Fed.Appx. at 493 (quoting United States v. Herndon, 156 F.3d 629, 636 (6th Cir.1998)).
At trial, Appellant’s counsel informed the trial court:
It’s come to my attention that there was a conversation in the hallway between the lady you just spoke to [juror] and the blond headed lady and the two women in the red back there in the back. I believe one of them is Mr. Smith’s mother.
(Joint Appendix (“JA”) 148-49.) As Appellant notes, counsel gave the trial court all the information within his knowledge that an improper communication likely had occurred. Specifically, defense counsel provided: (1) “the identity of the juror at issue;” (2) “a physical description of the women” involved; (3) “an assertion that one of these women was the victim’s mother;” and (4) “the location of the communication.” (Reply Br. of Petitioner-Appellant 7.) Moreover, counsel notified the court of this extraneous contact immediately after it occurred. Defense counsel did what it could, it alerted the trial court almost immediately of jurors’ possible contact with the victim’s mother. There can be little doubt that a conversation between the victim’s mother and a juror is the type of inappropriate communication that raises the specter of extraneous juror influence. See United States v. Hall, 455 F.3d 508, 521-22 (5th Cir.2006); Jones v. Kassulke, No. 95-6459, 1997 WL 664774, *2 (6th Cir. Oct. 23, 1997); Commonwealth v. Silvia, No. 07-P-940, 2009 WL 7709, at *2 (Mass. App.Ct. Jan. 2, 2009). This is especially true where, as was the case here, the trial occurred in a small town where those associated with the trial were likely to know one another. Although the trial judge said he would inquire into the matter later, he never did so, and only the judge was in a position to make such an inquiry.
The majority believes, however, that Appellant should have done more. In support of its decision that Appellant was required to provide more information to raise a colorable claim of extraneous juror contact, the majority attempts to distinguish Appellant’s case from Remmer, Herndon, and Conrado, where courts concluded that the trial court erred in failing to hold a Remmer hearing. In my view, the majority’s position is not well taken. Notably, in each of the aforementioned cases, someone privy to the extraneous juror communication came forward to report the details of the encounter to the *172 court. In Remmer v. United States, the jury foreman told the trial judge that someone tried to bribe him to acquit the defendant. 347 U.S. 227, 228, 74 S.Ct. 450, 98 L.Ed. 654 (1954). In Herndon, the jury foreman sent a note to the judge disclosing that he may have had prior business dealings with the defendant. 156 F.3d at 632. In United States v. Corrado, defense counsel informed both the prosecution and the district court that someone approached the defendant indicating he could influence a juror. 227 F.3d 528, 532-33 (6th Cir.2000).
Here, no one who was privy to the conversation between the victim’s mother and a juror, and possible two other persons, came forward. Put simply, only the trial court was in a position to gather more information; we should not penalize Appellant for the court’s failure to develop the record when it was the court, not the counsel, who were in a position and had a duty to inquire further. Additionally, requiring Appellant to provide information detailing the communication, where such information was not at his disposal, is tantamount to requiring him to prove prejudice before obtaining a Remmer hearing. This certainly cannot be the desired rule in a situation like this one. Finally, to hold a defendant to such a high standard runs afoul of the trial court’s duty to ensure that a defendant has an impartial and fair jury-
A trial court, in its discretion, must determine what steps, if any, are required to make certain that a jury’s impartiality has not been compromised. Rigsby, 45 F.3d at 124. Improper contact with a juror about a matter pending before the jury is presumptively prejudicial. Remmer, 347 U.S. at 229, 74 S.Ct. 450. “When there is a credible allegation of extraneous influences, the [trial] court must investigate sufficiently to assure itself that constitutional rights of the criminal defendant have not been violated.” Rigsby, 45 F.3d at 124-25. In this case, there is no suggestion that trial counsel’s assertions lacked credibility. Thus, a hearing was necessary to determine the exact nature of the contact before the trial court could determine whether the jurors’ contact with the victim’s mother had the potential to create a bias.
We are not in a position to review whether the trial court properly exercised its discretion in this case because even that court did not know the nature of the communication. Moreover, without sufficient details about the communication, we cannot review whether the trial court’s remedy, if any, was appropriate. See Davis, 177 F.3d at 557 (noting that without the benefit of a hearing delving into the extent to which an extraneous comment affected the juror’s deliberations, neither the district court nor this court has any basis for concluding that the extraneous communications were harmless).